## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PARKER-HANNIFIN CORPORATION and
PARKER INTANGIBLES, LLC,                    :
                                            :
                                            :
            Plaintiffs,                     :
                                            :
    v.                                      :        C.A. No. 06-751-MPT
                                            :
ZIPPERTUBING (JAPAN), LTD.,                 :
                                            :
            Defendant.                      :
_____             :
                                            :
PARKER-HANNIFIN CORPORATION and             :
PARKER INTANGIBLES, LLC,                    :
                                            :
            Plaintiffs,                     :
                                            :        C.A. No. 07-104-MPT
    v.                                      :
                                            :
SEIREN CO., LTD.,                           :
                                            :
            Defendant.                      :
_____             :


## PARKER'S CONSOLIDATED CLAIM CONSTRUCTION ANSWERING BRIEF

Rudolf E. Hutz (#484)
Francis DiGiovanni (#3189)
Steven A. Nash (admitted *pro hac vice*)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware  19899-2207
Tel:  (302) 658-9141
Fax:  (302) 658-5614

Attorneys for Defendants Parker-Hannifin Corporation
and Parker Intangibles, LLC

Date:  July 15, 2008

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF THE ARGUMENT .................................................................. 1

III.   STATEMENT OF FACTS ................................................................................. 2

IV.   ARGUMENT ...................................................................................................... 2

     A.    "which is not V-0 rated" .................................................................... 2

     B.    "exterior surface" ............................................................................... 4

     C.    "thickness dimension" ....................................................................... 6

     D.    "coating at least a portion of the interior surface" ............................ 8

     E.    "being/is effective to afford said gasket a flame class rating of V-0" ................... 9

     F.    "penetrating…such that the exterior surface remains electrically conductive" ...................................................................................... 10

          1.    Defendants' Construction Removes the Concept of "Penetrating" from the Claims.......................................................... 11

          2.    Defendants' Construction Improperly Imports a Numerical "0.1 $\Omega$/sq" Limitation from the Specification into the Claims .......................... 11

     G.    The Limitations Alleged By Defendants to Be Indefinite .................................... 13

          1.    "by weight" ............................................................................ 13

          2.    "by dry weight"...................................................................... 15

V.    CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Bayer AG v. Elan Pharm. Res. Corp.*,
212 F.3d 1241 (Fed. Cir. 2000) ........................................................................... 7

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
392 F. Supp. 2d 676 (D. Del. 2005) ..................................................................... 14

*Collaboration Properties, Inc. v. Tandberg ASA*,
No. C 05-01940 MHP, 2006 WL 1752140 (N.D. Cal. June 23, 2006) ................... 14

*Cordis Corp. v. Medtronic*,
339 F.3d 1352 (Fed. Cir. 2003) ........................................................................... 12

*Electro Med. Sys. v. Cooper Life Sci., Inc.*,
34 F.3d 1048 (Fed. Cir. 1994) ............................................................................. 6

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*,
No. 03-1303, 2004 WL 232089 (Fed. Cir. Feb. 2, 2004) ...................................... 12

*Exxon Research & Eng'g Co. v. United States*,
265 F.3d 1371 (Fed. Cir. 2001) ........................................................................... 14

*Geneva Pharms., Inc. v. Glaxosmithkline PLC*,
349 F.3d 1373 (Fed. Cir. 2003) ........................................................................... 15

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed. Cir. 2005) ........................................................................... 14

*Modine Manufacturing Co. v. Int'l Trade Comm'n*,
75 F.3d 1545  (Fed. Cir. 1996) ............................................................................ 11

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 6

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
400 F.3d 901 (Fed. Cir. 2005) ............................................................................. 7

*Power Mosfet Technologies v. Siemans AG*,
378 F.3d 1396 (Fed. Cir. 2004) ........................................................................... 8

*Process Control Corp. v. Hydreclaim Corp.*,
190 F.3d 1350 (Fed. Cir. 1999) ........................................................................... 4

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ........................................................................ 4

*Specialty Composites v. Cabot Corp.*,
    845 F.2d 981 (Fed.Cir.1988) ........................................................................... 12

*Telefex Inc. v. Ficosa North America Corp.*,
    299 F.3d 1313 (Fed. Cir. 1997) ......................................................................... 6

*Tip Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
    Nos. 2007-1241, 2007-1279, 2008 WL 2437764 (Fed. Cir. June 18, 2008) ............ 6

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ......................................................................... 5

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.,*
    209 F. Supp. 2d 348 (D. Del. 2002) ................................................................... 15

*Zip Dee, Inc. v. Dometic Corp.*,
    63 F. Supp. 2d 868 (N.D. Ill. 1998) .................................................................... 5

## STATUTES

35 U.S.C. § 112 ................................................................................................ 7

## OTHER AUTHORITIES

Webster's Ninth New Collegiate Dictionary
    (Merriam-Webster, 1987) .................................................................................. 5

## I.    INTRODUCTION

Parker-Hannifin Corporation and Parker Intangibles LLC (collectively "Parker") submit this brief in response to both Zippertubing, Ltd. ("Zippertubing"), and Seiren Co., Ltd. ("Seiren") (collectively "Defendants") Claim Construction Briefs (Zippertubing, D.I 44; Seiren, D.I. 48) construing certain terms of the asserted claims of U.S. Patent Nos. 6,521,348 ("the '348 patent"), 6,716,536 ("the '536 patent"), and 6,777,095 ("the '095 patent") (collectively "the patents-in-suit").[1]  Defendants' briefs confirm that Defendants are seeking to improperly alter the scope of the asserted claims in an effort to avoid infringement.

## II.    SUMMARY OF THE ARGUMENT

Defendants contend that their proposed constructions are consistent with claim terms' plain and ordinary meanings, the patents' specification, and the prosecution history.  A cursory review of Defendants' Markman Briefs, however, reveals that what Defendants say is far from what they do.  Defendants' constructions are divorced from the context of the patents and improperly seek to read limitations into the claims based on a purely illustrative embodiment of the invention and amendments made during the prosecution history.  Parker's constructions of the disputed claim terms, on the other hand, are consistent with the patent specifications and purpose.  Moreover, none of the amendments made during the prosecution of the patents-in-suit relied on by Defendants come close to the "clear and unmistakable" or "unambiguous" surrender of claim scope contemplated by controlling Federal Circuit law.  For the reasons set forth in Parker's Opening Claim Construction Briefs (Zippertubing, D.I. 40; Seiren, D.I. 44) and herein, Parker respectfully submits that the Court should reject Defendants' proposed claim constructions and adopt Parker's proposed constructions.

---

[1] U.S. Patent Nos. 6,248,393 and 6,387,523 were also asserted in this action.

## III.   STATEMENT OF FACTS

Parker incorporates by reference the Statement of Facts set forth in its Opening Claim Construction Briefs.[2]

## IV.   ARGUMENT

### A.   "which is not V-0 rated"

| Parker's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| "which is not V-0 rated" means the core member would not be accorded a V-0 rating under UL Standard No. 94 were the core member to be submitted to UL for testing | "which is not V-0 rated" means the core member has not received a V-0 rating under Underwriter's Laboratories UL Standard No. 94 |

Defendants' construction of "which is not V-0 rated" ignores a fundamental purpose of the inventions of the patents-in-suit and, therefore, should be rejected.  Defendants' construction reads in a further negative limitation that would exclude from the scope of the claim only those core members that have been submitted to UL for testing and have received a V-0 rating.  This is different from Parker's construction, which would exclude from the scope of the claims any core members which would not achieve a V-0 rating.  There is no support in the intrinsic evidence that the asserted claims be limited in the manner proposed by Defendants.  Indeed, the intrinsic evidence is to the contrary.

Prior to the inventions of the patent-in-suit, the core members of EMI shielding gaskets were heavily loaded with flame retardant additives in order to achieve a V-0 rating.  Second

---

[2] Sieren incorrectly defines the level of ordinary skill in the art in its opening claim construction brief.  Contrary to Seiren's contention, a person of ordinary skill in the art at the time of the patents-in-suit would be familiar with the design and properties of flame retardant EMI shielding gaskets, and would have either (1) at least a bachelor's degree in chemistry or mechanical, chemical, or industrial engineering, or any of their equivalents, and about one year of experience in EMI shielding technology, or (2) four years or more work experience in the design or manufacture of flame retardant EMI shielding gaskets.

Flanders Decl. ¶ 4.[3]  The problem with such core members is that the flame retardant additives made the core member less resilient over time, adversely effecting the gasket's shielding ability. *Id.* ¶ 5.  The inventors of the patents-in-suit recognized this problem and came up with the solution to provide a flame retardant layer coating on at least a portion of the interior surface of the fabric that covered the core member which would be effective to afford the gasket a V-0 rating.  *Id.* ¶ 6; '348 patent 3:35-39.  In other words, the patents-in-suit were focused on achieving V-0 rated gaskets by taking core members that would exhibit resiliency over time, and thus would not be amenable to be separately given a V-0 rating if tested, and by wrapping those core members in a flame retardant coated fabric that would be effective to afford the gasket a V-0 rating.  *Id.*

Defendants' construction of "which is not V-0 rated" is predicated upon the core member being actually submitted for testing.  As a result, core members that have not been submitted for testing would necessarily be included in Defendants construction regardless of whether they would be V-0 rated if tested.  Consequently, core members that have not been UL tested, but would be accorded a V-0 rating if tested, would be swept up in Defendants' construction.

Such a result is contrary to the purpose of the inventions of the patents-in-suit.  If the core member itself is made of a material that would receive a V-0 rating, then a fundamental aspect of the inventions, achieving a V-0 rating by virtue of a flame retardant fabric rather than a flame retardant core member, would be completely eviscerated.  Accordingly, the Court should reject Defendants' attempt to read out the limitation that the core member not be of V-0 flame

---

[3] "Second Flanders Decl." refers to the Declaration of William I. Flanders in Support of Plaintiffs' Answering Claim Construction Brief, which has been concurrently filed herewith.

retardance.[4]  *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1251-53 (Fed. Cir. 1998) (holding claim terms should be construed in accordance with the purposes of the claimed invention); *see also, Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1356 (Fed. Cir. 1999) (where alternative interpretations exist, the court should not construe the patent in a way that would render it useless).

Parker's proposed construction, on the other hand, takes into account a fundamental concept of the patents-in-suit by ensuring that the V-0 rating is the result of the flame retardant jacket, not the core member.  This construction is consistent with the specification that the core members would not be given a V-0 rating, regardless of whether the core member was actually submitted for UL testing.[5]  Instead, it is the flame retardant jacket in the foam-over gasket construction of the inventions of the patents-in-suit that affords the gasket a V-0 rating.

**B.**    **"exterior surface"**

| Parker's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "exterior surface" needs no construction.  To the extent the Court deems a construction is necessary, the term "exterior surface" means the exteriorly facing surface of the referenced article | "exterior surface" means the outer face, outside or exterior boundary of the fabric member |

Defendants' proposed construction ignores the plain meaning of "exterior surface" and seeks to read in additional limitations that are not only unsupported by the intrinsic evidence, but will add ambiguity, thereby confusing the jury.  For example, Defendants seek to read in the

---

[4] Zippertubing notes in its brief that the "V-0" limitation was added in response to a 35 U.S.C. § 112 rejection.  Zippertubing, does not argue, because it cannot, that the fact applicants added this language during prosecution supports its construction.

[5] "Core member 52 therefore may be formed of a foamed elastomeric thermoplastic such as a polyethelyene, polypropylene, polypropylene-EPDM blend, butadiene, styrene-butadiene, nitrile, chlorosulfonate, or a foamed neoprene, urethane, or silicone."  '348 patent 7:49-53.  "[I]t has long been recognized that foamed polymeric materials are flammable and, in certain circumstances, may present a fire hazard."  *Id.* at 2:64-67.

limitation that the exterior surface be the "exterior boundary." There is no support in the intrinsic evidence to replace the word "surface" with "boundary." Indeed, the inventors never used the term "boundary" in describing the exterior surface of the fabric cover. "Boundary" in fact adds an entirely new limitation—that the exterior of the fabric member establish some sort of border or limit—which is not required by the patent. *See* Webster's Ninth New Collegiate Dictionary (Merriam-Webster, 1987) at 171 attached to the Declaration of Keith A. Walter, Jr. at Ex. A.

Defendants also propose adding the phrase "of the fabric member" to the end of their proposed construction of exterior surface. However, the claim limitation where the term "exterior surface appears" already makes clear that the "exterior surface" is the exterior surface of the fabric cover—"said <u>fabric member</u> having an interior surface disposed facing the outer surface of said core member and an oppositely-facing, <u>exterior surface</u>." '348 patent, claim 1 (emphasis added). Therefore, adding the phrase "of the fabric member" to the construction of exterior surface would be superfluous and confuse the jury. Accordingly, Defendants' construction should be rejected.

Parker contends the term "exterior surface" is readily understandable by the jury and does not need to be construed by the Court. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *Zip Dee, Inc. v. Dometic Corp.*, 63 F. Supp. 2d 868, 872 (N.D. Ill. 1998). To the extent the Court feels it necessary to construe the term "exterior surface," Parker proposes that the jury be instructed that "exterior surface" means "the exteriorly facing surface of the referenced article." This construction is consistent with the term's plain and ordinary meaning and could be helpful to the jury in determining the spatial arrangement between the fabric member's interior and exterior surfaces.

C.     "thickness dimension"

| Parker's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "thickness dimension" means the distance between the exterior surface and the interior surface of the fabric member | "thickness dimension" means the dimension represented by "$t_1$" in Fig. 2. |

Defendants' construction of "thickness dimension" should be rejected for two reasons: (1) it is contrary to the claim language; and (2) Defendants' proposed construction improperly imports a limitation from the specification into the claims.

First, Defendants completely ignore the fact that the term "thickness dimension" is expressly defined by the claims.   Claim 1 of each patent-in-suit requires an electrically-conductive fabric member having "at least the exterior surface being electrically-conductive and the exterior surface defining with the interior surface a thickness dimension of the fabric member therebetween."   '348 patent at 10:62-65.   Thus, claim 1 expressly requires that the "thickness dimension" is defined by the exterior surface of the fabric member and the interior surface of the fabric member.   This claim language is dispositive.   *See, e.g., Tip Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, Nos. 2007-1241, 2007-1279, 2008 WL 2437764, at *7 (Fed. Cir. June 18, 2008) (where the claim itself contains a precise definition of the term that is consistent with the specification, the district court is justified in adopting it).

Second, Defendants' proposed construction would limit the term "thickness dimension" to an illustrative embodiment of the patents-in-suit depicted in Figure 2.   However, nothing in the intrinsic evidence indicates that the inventors limited their invention to Figure 2.   Since there has been no clear disavowal of the scope of the '883 patent, it would be improper to limit the claims to an embodiment as Defendants suggest.   *Telefex Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 1997); *Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed. Cir. 2005); *Electro Med. Sys. v. Cooper Life Sci., Inc.,* 34 F.3d 1048, 1054 (Fed. Cir. 1994)

("[P]articular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments."); *Playtex Prods., Inc. v. Procter & Gamble Co.,* 400 F.3d 901, 908 (Fed. Cir. 2005) ("Claims of a patent may only be limited to a preferred embodiment by the express declaration of the patentee.") (citation omitted).

Further, Seiren suggests that Parker's proposed construction would render the claims indefinite. This argument has no merit because the distance between the exterior surface and interior surface of the fabric member may readily be determined based on the fabric member's dimensions.

In addition, Zippertubing references the fact that the term "thickness dimension" was added during the prosecution history to overcome a 35 U.S.C. § 112 rejection. However, nothing in the response to that rejection dictates that "thickness dimension" be limited to the $t_1$ dimension in Figure 2. Certainly, the prosecution history statements do not constitute "clear and unmistakable statements of disavowal" as required by Federal Circuit law. *See, e.g., Bayer AG v. Elan Pharm. Res. Corp.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000). As a result, the Court should reject Defendants proposed claim construction.

Parker's construction is consistent with the language of the claim itself—"the exterior surface defining with the interior surface a thickness dimension of the fabric member therebetween." *See, e.g.*, '348 patent, claim 1. Given the clear and explicit definition provided in the claims and the consistency of that definition with the ordinary and customary meaning, Parker's construction should be adopted.

### D.    "coating at least a portion of the interior surface"

| Parker's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| "coating at least a portion of the interior surface" means a layer having flame retardant properties covers at least a portion or the entirety of the interior surface of the fabric member | "coating at least a portion of the interior surface" means the flame retardant layer is directly applied to the interior surface of the fabric member, covering at least a portion of that interior surface |

Defendants propose to improperly narrow the term "coating" to only those coatings that are "directly applied to the interior surface of the fabric member." Upon review of the intrinsic record, there is simply no support to limit the plain and ordinary meaning of "coating" as Defendants suggest. Defendants contend that patent Figures 5 and 6, and the disclosure in the specification accompanying those figures, show the direct coating of the flame retardant layer upon the interior surface of the fabric. These figures and the accompanying disclosure, however, are in reference to only an illustrative embodiment of the inventions. Since there has been no clear disavowal of the scope of the patents-in-suit, it would be improper to limit the claims to that embodiment as Defendants suggest. *Telefex Inc.*, 299 F.3d at 1325; *Phillips,* 415 F.3d at 1323; *Electro Med. Sys., S.A.*, 34 F.3d at 1054 ("[P]articular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments."); *Playtex Prods., Inc.*, 400 F.3d at 908 ("Claims of a patent may only be limited to a preferred embodiment by the express declaration of the patentee.") (citations omitted). As a result, Defendants' attempt to rewrite the claims must be rejected.

Seiren contends that the Federal Circuit's decision in *Power Mosfet Technologies v. Siemans AG*, 378 F.3d 1396 (Fed. Cir. 2004), supports Defendants proposed construction. Seiren is wrong for at least two reasons. First, in *Mosfet*, the dispute was not over the meaning of the term "coating." Instead, the dispute was regarding the phrase "second contact layer contacting with all the first and second semiconductor regions to for a second interface."

Second, although the court found the disputed phrase required direct physical contact between the contact layer and the semiconductor regions, despite the word direct being absent from the claim language, this result is not surprising, since the claim language requires a <u>contact</u> layer <u>contacting</u> the semiconductor regions.  In short, the *Mosfet* decision is simply not relevant to instant matter.

As set forth in Parker's Opening Brief, Parker's proposed construction adopts the plain and ordinary meaning of "coating," which includes coatings that are applied both indirectly and directly to the interior surface of the fabric member.  Accordingly, Parker's proposed construction should be adopted.

**E.**    **"being/is effective to afford said gasket a flame class rating of V-0"**

| Parker's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "being/is effective to afford said gasket a flame class rating of V-0" means providing the gasket with flame retardant properties that are sufficient so that the gasket has been accorded a V-0 rating by UL after testing for flammability under UL Standard No. 94 | "being/is effective to afford said gasket a flame class rating of V-0" means the gasket would receive a V-0 rating if it were tested according to Underwriter's Laboratories (UL) Standard No. 94 |

Defendants' proposed construction for "flame retardant layer being/is effective to afford said gasket a flame class rating of V-0" completely reads out the concept that it is *the flame retardant layer* that affords (or causes) the gasket to achieve a V-0 rating.  Under Defendants' construction, *anything* can cause the gasket to be flame retardant, yet the claim would still cover the gasket.  This is not what is claimed, is not what the specification describes, and is not the purpose of the invention.

The claim language very clearly requires that the "*flame retardant layer is effective to afford* said gasket a flame class rating of V-0."  '348 patent at claim 15 (emphasis added); *see*

*also* '348 patent at claim 1 ("*flame retardant layer being effective to afford* said gasket a flame class rating of V-0") (emphasis added).

The specification describes the flame retardant layer as being the element of the gasket that causes the gasket to be flame retardant. *See, e.g.,* '348 patent at 3:44-46 ("Such a thin coating layer, while being sufficient to provide UL94 V-0 protection . . . .").

Moreover, the *purpose* of the patent was to have a flame retardant layer, not the foam core, afford the flame retardance. *See, e.g.,* '348 patent 3:35-39.

Defendants' proposed construction completely eliminates the notion that the *flame retardant layer* is effective to afford the flame retardance. Under the defendant's proposed construction, the core can afford the flame retardance. This is not what was contemplated—and claimed—by the patents-in-suit. Defendants' proposed construction must be rejected.

Based on this and other passages in the specification emphasizing the importance of actual V-0 approval, one of ordinary skill in the art would understand that the phrase "being/is effective to afford said gasket a flame class rating of V-0" requires that gasket has been accorded a V-0 rating by UL under UL Standard No. 94.

### F. "penetrating…such that the exterior surface remains electrically conductive"

| Parker's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "penetrating…such that the exterior surface remains electrically conductive" means the coating enters into the fabric to a depth which is between the interior surface and the exterior surface such that the electrical conductivity of the exterior surface is not appreciably affected | "penetrating…such that the exterior surface remains electrically conductive" means the flame retardant layer does not penetrate the fabric member to an extent that would cause the exterior surface of the fabric member to have a surface resistivity greater than about 0.1 $\Omega$/sq |

Defendants' proposed construction again fails for at least two reasons: (1) it completely reads out the concept of "penetrating"; and (2) it imports the numerical "0.1 $\Omega$/sq" limitation from the specification into the claims.

10

### 1. Defendants' Construction Removes the Concept of "Penetrating" from the Claims

If Defendants' construction were adopted by the Court, the claims would no longer require—contrary to the claim language—that the flame retardant layer penetrate into the fabric member. Defendants' construction wholly eliminates this requirement. In fact, Defendants' construction phrases "penetration" in the negative (". . . the flame retardant layer does not penetrate the fabric member to an extent . . ."). Defendants' construction would encompass gaskets where the penetration is *zero*, i.e., the flame retardant layer is merely on the surface of the fabric. This directly contravenes the claim language "*penetrating into* said fabric member." '384 patent at claim 1 (emphasis added).

### 2. Defendants' Construction Improperly Imports a Numerical "0.1 $\Omega$/sq" Limitation from the Specification into the Claims

Defendants' proposed construction improperly imports a limitation from the specification into the clams. Defendants' proposed construction replaces the term "electrically conductive" with the phrase "surface resistivity greater than about 0.1 $\Omega$/sq." The passage in the patent specifications that Defendants rely upon is in reference to one embodiment of the inventions of the patents-in-suit. In connection with description of that particular embodiment, the inventors state that "[b]y electrically-conductive it is meant that the fabric may be rendered conductive, i.e., to a surface resistivity of about 0.1 $\Omega$/sq." This statement regarding an embodiment certainly cannot be viewed as the inventors clearly limiting their invention to only where the fabric has a surface resistivity greater than about than about 0.1 $\Omega$/sq.

Seiren erroneously relies on *Modine Manufacturing Co. v. International Trade Commission*, 75 F.3d 1545, 1553 (Fed. Cir. 1996), in support of its contention that "[i]t is not uncommon for courts to construe a claim term according to mathematical values expressly disclosed in the specification." Contrary to Seiren's assertion, the Federal Circuit in *Modine*

*Manufacturing* states the exact opposite:

> Ordinarily a claim element that is claimed in general descriptive words, when a numerical range appears in the specification and in other claims, is not limited to the numbers in the specification or the other claims. *See Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987, 6 USPQ2d 1601, 1604 (Fed.Cir.1988) ("[P]articular embodiments appearing in the specification will not generally be read into the claims.... What is patented is not restricted to the examples, but is defined by the words in the claims.") It is usually incorrect to read numerical precision into a claim from which it is absent, particularly when other claims contain the numerical limitation.

*Id.* at 1551. Indeed, the Federal Circuit has routinely refused to read in numerical limitations to claim. *See, e.g., Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, No. 03-1303, 2004 WL 232089, at *3 (Fed. Cir. Feb. 2, 2004) (holding that "there is nothing in the written description or prosecution history to warrant the incorporation of the numeric values [from an example of the specification] into the claim"); *Cordis Corp. v. Medtronic*, 339 F.3d 1352, 1362 (Fed. Cir. 2003) (holding that the district court erred in imposing a numerical restriction on the "substantially uniform thickness" limitation).

Since there is nothing in the written description or prosecution history that warrants the incorporation of the "about 0.1 $\Omega$/sq" example in the specification into the claims, it would be improper to limit the claims to a preferred embodiment as Defendants suggests. *Telefex Inc.*, 299 F.3d at 1325; *Phillips,* 415 F.3d at 1323; *Electro Med. Sys., S.A.*, 34 F.3d at 1054 ("[P]articular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments."); *Playtex Prods., Inc.*, 400 F.3d at 908 ("Claims of a patent may only be limited to a preferred embodiment by the express declaration of the patentee.") (citation omitted). As a result, the Court should reject Defendants' proposed claim construction.

### G.    The Limitations Alleged By Defendants to Be Indefinite

Defendants erroneously contend that the following "by weight" claim limitations are indefinite:[6]

- "said flame retardant layer comprising between about 30-50% by weight of one or more flame retardant additives" ('348 patent claim 8)

- "said flame retardant layer comprising between about 30% by weight of one or more flame retardant additives" ('536 patent claim 1) and,

- "said flame retardant layer comprising between about 50% by dry weight of one or more flame retardant additives" ('095 patent claim 1)

### 1.    "by weight"

Defendants contend that the "by weight" limitations are indefinite to the extent they do not specify wet or dry weight. Defendants are wrong. As set forth in Parker's opening brief, the specification makes clear to one of ordinary skill in the art that the "by weight" claim limitation in claim 8 of the '348 patent means that "the flame retardant layer <u>when applied</u> contains between about 30% and about 50% of flame retardant additives." Similarly, the specification makes clear to one of ordinary skill in the art that the "by weight" claim limitation in claim 1 of the '536 patent means that "the flame retardant layer <u>when applied</u> contains about 30% of flame retardant additives."

Parker's proposed claim constructions are supported by the specification which describes that the flame retardant layer can be formed from an aqueous emulsion:

> Returning to FIGS. 1 and 2, coating member 14 preferably is formed from a curable layer of a fluent, flame retardant resin or other composition which is wet coated onto the second side 18 of fabric member 12.

> * * *

> The flame retardant composition preferably is formulated as an aqueous emulsion of an acrylic latex emulsion which is adjusted to a total solids of about 60% and a

---

[6] As an initial matter, Defendants' indefinite arguments (which are *de facto* summary judgment arguments) are not ripe.

> Brookfield viscosity (#5 spindle, 4 speed) of between about 40,000-60,000 cps, at a density of about 10 lbs per gallon (1.8 g/cm.sup.3). Flame retardancy may be imparted by loading the emulsion with between about 30-50% by weight of one or more conventional flame retardant additives such as aluminum hydrate, antimony trioxide, phosphate esters, or halogenated compounds such as polybrominated diphenyl oxides.

'348 patent 6:35-38; 6:60-68.

The specification continues, "[t]he emulsion is applied to the fabric member as a liquid, and then cured to form a dried film." *See* '348 patent 8:61-62 (emulsion is coated and cured); '348 patent 9:13-34 (describing application of the liquid coating); '348 patent 9:34-42 (describing curing of the applied coating). Accordingly, one of ordinary skill in the art would understand that "about 30-50% by weight" and "at least about 30% by weight" refer to the amount of flame retardant additive in the emulsion, *i.e.*, the form of the coating at the time it is applied. Because the meaning of the terms "about 30-50% by weight" and "at least about 30% by weight" are discernable, Defendants claims of indefiniteness should be rejected.[7] *See, e.g., Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (holding that a claim is sufficiently clear to avoid invalidity on indefiniteness grounds "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree"); *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 680 (D. Del. 2005) (rejecting defendant's indefiniteness assertion because

---

[7] Zippertubing appears to contend that Parker's proposed construction would render the claim indefinite under *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) because it would incorporate a method limitation into an apparatus claim. Zippertubing is wrong. *IPXL* is inapposite. First, Parker's proposed constructions are not method limitations. Second, *IPXL* "stand[s] for the narrow ruling that a single claim may not purport to cover a system, independent of any use of the system, and simultaneously purport to cover a particular use of the system." *Collaboration Properties, Inc. v. Tandberg ASA*, No. C 05-01940 MHP, 2006 WL 1752140, at *7 (N.D. Cal. June 23, 2006).

the claim limitation at issue "has a discernable meaning that would be understood by one of ordinary skill in the art").

**2.     "by dry weight"**

Defendants' argument that the phrase "by dry weight" in claim 1 of the '095 patent is indefinite has no merit.  The claim language is clear even to a lay person.  The term requires that the flame retardant layer when dried or otherwise hardened contains at least about 50% of flame retardant additives.  Defendants do not dispute the plain meaning of this language.  Instead, Defendants merely state the specification does provide guidance as to how to perform a "dry weight" measurement on the claimed gaskets.  This is not the test for indefiniteness.  Instead, a patent claim is indefinite if "its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular [product of method] infringes or not." *Geneva Pharms., Inc. v. Glaxosmithkline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003).

Here, Defendants provide no evidence by way of an expert declaration or otherwise that a person of ordinary skill in art would not be able to determine whether the accused product infringes or not.  Instead, Defendants erroneously rely on conclusory attorney argument that the specification does not provide guidance as to how to perform a "dry weight" analysis.  Contrary to Defendants' contention, and upon application of the correct standard for indefiniteness, claim 1 of the '095 patent is definite under Parker's proposed construction because a potential infringer can definitively assess whether a given potentially infringing gasket has the requisite amount of flame retardant additives by analyzing the hardened flame retardant layer.  Defendants' conclusory attorney argument alone cannot satisfy its burden to prove by clear and convincing evidence that claims are invalid as indefinite. That argument should be rejected.  *See Wesley Jessen Corp. v. Bausch & Lomb, Inc.,* 209 F. Supp. 2d 348, 400 (D. Del. 2002) (rejecting

15

defendant's indefinite contention that a person of ordinary skill in the art would not be able to determine whether a potentially infringing material met the "increased wettability" claim limitation).

## V.    CONCLUSION

In view of the foregoing, Parker respectfully submits that the Court should adopt Parker's proposed claim constructions and reject Defendants' proposed claim constructions.


Respectfully submitted,


/s/ Francis DiGiovanni
Rudolf E. Hutz (#484)
Francis DiGiovanni (#3189)
Steven A. Nash (admitted *pro hac vice*)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware  19899-2207
Tel:  (302) 658-9141
Fax:  (302) 658-5614

Attorneys for Plaintiffs Parker-Hannifin
Corporation and Parker Intangibles, LLC

Date:  July 15, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to counsel of record on the Court's CM/ECF registrants for this case. I further certify that on July 15, 2008, I caused a copy of the foregoing document to be served upon the following in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**
Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com

**BY E-MAIL**
Scott M. Daniels
Ken-Ichi Hattori
Michael J. Caridi
Westerman, Hattori, Daniels & Adrian, LLP
1250 Connecticut Ave. NW
Washington, D.C. 20036
sdaniels@whdapatentlaw.com


*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)