IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION and | ) | |
| PARKER INTANGIBLES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-104 (MPT) |
| | ) | |
| SEIREN CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SEIREN CO., LTD.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE AN AMENDED ANSWER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
*Attorneys for Defendant Seiren Co., Ltd.*

OF COUNSEL:

Scott M. Daniels
Ken-Ichi Hattori
Michael J. Caridi
WESTERMAN, HATTORI, DANIELS
  & ADRIAN, LLP
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC  20036
(202) 822-1100

August 25, 2008

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING..........................................................................1

SUMMARY OF ARGUMENT ...............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT .......................................................................................................................4

    I.   Leave to Amend Pleadings is Freely Given....................................................................4

    II.  There is no Undue Prejudice to Parker ........................................................................5

    III. Parker Can Point to no Other Factor That Would Justify the Court's
          Departure from the Liberal Policy Favoring Granting Leave to Amend.......................6

CONCLUSION......................................................................................................................7

## TABLE OF AUTHORITIES

CASES                                                                                Page(s)

*Bechtel v. Robinson*,
    886 F.2d 644 (3d Cir. 1989)................................................................7-8

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971)..........................................................................9

*Dole v. Arco Chem. Co.*,
    921 F.2d 484 (3d Cir. 1990)................................................................8

*Elizabethtown, Inc. v. Coca-Cola Co.*,
    668 F. Supp. 906 (D. Del. 1987)..........................................................7

*Enzo Life Sciences, Inc. v. Digene Corp.*,
    270 F. Supp. 2d 484 (D. Del. 2003)......................................................10

*Foman v. Davis*,
    371 U.S. 178 (1962)..........................................................................7

*In re Burlington Coat Factory Sec.*,
    114 F.3d 1410 (3d Cir. 1997)................................................................7

*Kalman v. Berlyn Corp.*,
    914 F.2d 1473 (Fed. Cir. 1990)............................................................7

*Kiser v. General Elec. Corp.*,
    831 F.2d 423 (3d Cir.1987)................................................................7

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993)..............................................................7, 9

*Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*,
    No. 07-cv-266 (D. Del, Dec. 18, 2007) ................................................8

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999)..........................................................9

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,
    2007 WL 1670387 (D. Del. June 7,2007)..............................................10

RULES AND STATUTES

35 U.S.C. § 112................................................................................8

Fed. R. Civ. P. 15(a) ........................................................................7

Fed. R. Civ. P. 15(a)(2)..................................................................................................7

Rule 16(b)(4), Fed. R. Civ. P..........................................................................................10

<u>NATURE AND STAGE OF THE PROCEEDING</u>

Parker-Hannifin Corporation ("Parker") filed this action on February 22, 2007 against Seiren Co., Ltd. ("Seiren"), alleging infringement of four United States patents (collectively, the "patents-in-suit"). On May 31, 2007, Seiren filed its Answer to Parker's Complaint. On January 10, 2008, Parker moved to file an Amended Complaint, which the Court granted on April 25, 2008.

Parker has also asserted these same patents in two other actions pending in this Court – *Parker-Hannifin Corp. v. Zippertubing, Ltd*., No. 07-cv-00751-MPT ("the Zippertubing litigation") and *Parker-Hannifin Corp. v. Schlegel Electronic Materials, Inc*., No. 07-cv-266-MPT ("the Schlegel litigation"). Until recently, all three cases were on the same discovery track. The original Scheduling Order entered by the Court in this matter identified February 21, 2008 as the last day to amend or supplement the pleadings. The fact discovery cut-off date under that Order was May 30, 2008, approximately three months after the deadline to amend the pleadings. In the Schlegel litigation, Schlegel filed an Amended Answer and Counterclaim on December 18, 2007, which included the identical inequitable conduct defense that Seiren now seeks leave to assert in this case. On April 25, 2008, the Court amended the Scheduling Order to extend fact discovery in the Zippertubing and Seiren litigation until November 14, 2008 (with the same cut-off date for expert discovery).

Zippertubing filed a Motion for Leave to file an Amend Answer on August 18, 2008 in the Zippertubing litigation, which is identical to the present motion.

<u>SUMMARY OF ARGUMENT</u>

The law of the Third Circuit is clear. Leave to amend pleadings should be freely given absent a compelling, countervailing reason, such as undue prejudice to the nonmoving party, undue delay, bad faith or futility. Seiren's motion to amend does not unduly prejudice

Parker. It simply seeks to preserve the same inequitable conduct defense that has already been raised in the Schlegel litigation, since the Schlegel case is no longer on the same schedule. Moreover, there are still three months left in discovery, nearly the same amount of time to complete fact discovery as the original Scheduling Order provided for following the deadline for amendments to the pleadings.

Seiren's Amended Answer will not result in duplicative discovery or undue delay. Neither Parker nor Seiren has taken a deposition yet, and discovery is not scheduled to close until November 14, 2008. For these reasons, Seiren respectfully submits that its motion to amend should be granted.

## STATEMENT OF FACTS

In separate actions in this Court, Parker asserts three patents against Zippertubing, Schlegel and Seiren. Although it was originally contemplated that these cases would be tried separately, they have proceeded under a consolidated discovery schedule.

In the Court's September 11, 2007 Scheduling Order entered in all three cases (the "original Order"), the last day to amend or supplement the pleadings was February 21, 2008, and the discovery cut off date was May 30, 2008, approximately three months after the deadline to amend the pleadings.[1] On April 25, 2008, the Court amended its Scheduling Orders in the Seiren and Zippertubing litigations to extend fact discovery to November 14, 2008.[2] Before the date specified in the original Order, Schlegel filed an Amended Answer and Counterclaims.

---

[1]    D.I. 16 (Scheduling Order at ¶¶ 2 and 3.c, *Parker-Hannifin Corp. v. Seiren (Japan), Ltd.*, No. 07-cv-104-MPT (D. Del. Sept 11, 2007)).

[2]    After the deadline for amending the pleadings in the original Order, the issue of placing the Schlegel litigation on a separate track was raised. This ultimately occurred. *See* April 14, 2008 e-mail correspondence between parties' counsel, attached to the Declaration of William J. Marsden, Jr. as Exhibit A (hereinafter "Marsden Decl. Ex. –"). The Marsden Decl. was filed in support of Zippertubings's Motion for Leave to file an Amended Answer.

Among other things, Schlegel pled inequitable conduct as an affirmative defense and gave a detailed account of Parker's misconduct.[3] Seiren and Zippertubing did not duplicate Schlegel's assertions at that time because it was unnecessary. If the patents-in-suit were to be held invalid and unenforceable in the Schlegel litigation, that outcome would apply equally to Zippertubing and Seiren. Moreover, the parties were proceeding under a consolidated discovery schedule with the same trial-ready date. Schlegel and Parker apparently began settlement negotiations in late March or early April 2008, after the deadline for amending the pleadings.[4] On April 14, 2008, Schlegel and Parker apparently reached an agreement to settle all their respective claims.[5] According to Schlegel, Parker reneged on this agreement several weeks later, and Schlegel was forced to file a Motion To Enforce Settlement Agreement.[6] On June 6, 2008, the parties stipulated that all activities would be stayed until Schlegel's motion is decided.[7] As a result of this stay, the Schlegel litigation is no longer proceeding on the same trial-ready schedule as the Seiren and Zippertubing litigations, and it is uncertain if the case will ever be tried.

        Accordingly, it is no longer certain that Schlegel will prosecute its inequitable conduct defense. Because Seiren believes that the facts pled in Schlegel's previously filed

---

[3]    D.I. 29 (Schlegel litigation) (Amended Answer And Counterclaim Of Defendant Schlegel Electronic Materials, Inc., at 3-14, *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, No. 07-cv-266-MPT (D. Del. Dec. 18, 2008)).

[4]    D.I. 38 (Schlegel litigation) (Defendant' s Memorandum In Support Of Its Motion To Enforce A Settlement Agreement, *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, No. 07-cv- 266-MPT (D. Del. May 28, 2008)).

[5]    *Id.*

[6]    *Id.*

[7]    D.I. 41 (Schlegel litigation) (Stipulation To Stay Activities Pending Resolution Of Defendant' s Motion To Enforce A Settlement Agreement, *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, No. 07-cv-266-MPT (D. Del. June 6, 2008)).

Amended Answer support a finding of inequitable conduct, it seeks leave to add that defense, based on the same facts, to its Answer in this case.

On July 31, 2008, Zippertubing and Seiren asked Parker if it would oppose this motion to amend.[8] On August 12, Parker stated that it would oppose this motion.[9]

As a result of the stay in the Schlegel litigation, as well as Parker's continued assertion of three remaining patents against Seiren and Zippertubing, Seiren seeks leave to amend its Answer to assert that those patents (the "'536 patent," the "'348 patent," and the "'095" patent), are invalid and unenforceable because of Parker's inequitable conduct before the U.S. Patent Office.

<u>ARGUMENT</u>

I.    <u>LEAVE TO AMEND PLEADINGS IS FREELY GIVEN</u>

Fed. R. Civ. P. 15(a) states that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). *See also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."); *In re Burlington Coat Factory Sec.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit treats Rule 15(a) motions liberally, as "courts have shown a strong liberality in allowing amendments under Rule 15(a)." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (citations omitted).  "In the absence of any apparent or declared reason . . . the leave should, as the rules require, be freely given." *Id.*; *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1479 (Fed. Cir. 1990).

---

[8]    Marsden Decl., Ex. B (August 7, 2008 e-mail correspondence between parties' counsel).

[9]    Marsden Decl., Ex. D (August 12, 2008 e-mail correspondence between parties' counsel).

Denial of leave to amend is generally limited to situations where the non-moving party will be substantially prejudiced by the amendment. "Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Bechtel*, 886 F.2d at 652; *Lorenz v. CSX Corp*., 1 F.3d 1406, 1413-14 (3d Cir. 1993). The burden to show prejudice rests on the non-moving party. *Kiser v. General Elec. Corp*., 831 F.2d 423, 428 (3d Cir.1987); *see also Coca-Cola Bottling Co*. of *Elizabethtown, Inc. v. Coca-Cola Co.*, 668 F. Supp. 906, 921-22 (D. Del. 1987) (finding that conclusory allegations of prejudice will not suffice to defeat a motion to amend). It requires that "the non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Bechtel*, 886 F.2d at 652 (internal quotations omitted). Where no prejudice exists, "denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz*, 1 F.3d at 1414.

## II.    THERE IS NO UNDUE PREJUDICE TO PARKER

In order to show prejudice, "[Parker] is required to demonstrate that its ability to present its case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (finding no hardship where the facts and circumstances of new allegations were similar to the original allegations). Prejudice sufficient to justify denial usually entails new claims or factual assertions brought after discovery had closed or during the later stages of discovery. *See Bechtel*, 886 F.2d at 652.

Here, Seiren seeks to add the same inequitable conduct defense that was already raised in the Schlegel litigation.[10] Parker will not be surprised or prejudiced as a result. Indeed,

---

[10]    *Compare* D.I. 29 (Schlegel litigation) (Amended Answer and Counterclaim of Defendant Schlegel Electronic Materials, Inc.*, Parker-Hannifin Corp. v. Schlegel Elec. Materials,*

very little additional discovery will be necessary. The factual bases for the defense have already been detailed in Schlegel's pleading—namely: (1) Parker's inconsistent statements to the U.S. Patent Office (which are a matter of public record); and (2) the invalidity of the patents-in-suit under 35 U.S.C. § 112. There are three months remaining in the discovery period. Although documents have been produced, neither Parker nor Seiren or Zippertubing have taken any depositions. Thus, there will be no duplicative discovery and the proposed amendment will not add significantly to the parties' litigation costs.

### III. PARKER CAN POINT TO NO OTHER FACTOR THAT WOULD JUSTIFY THE COURT'S DEPARTURE FROM THE LIBERAL POLICY FAVORING GRANTING LEAVE TO AMEND

In the absence of prejudice, "denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz*, 1 F.3d at 1414. Many of these factors are plainly inapplicable. Parker may argue that the motion for leave to amend should be denied because of undue or unexplained delay. However, it cannot meet its burden because any delay is largely due to Parker's own lack of diligence in prosecuting this case.

The original deadline to amend the pleadings was approximately three months before the close of discovery. (D.I. 16, ¶¶ 2, 3.c.) The discovery cut-off date was then extended to November 14, 2008, at Parker's request. At that time, Seiren did not seek to extend the deadline to amend or supplement the pleadings, because the charge of inequitable conduct was still pending in the Schlegel litigation and it did not appear that case would be stayed (or possibly dismissed in the future). There was no need for Seiren or Zippertubing to assert inequitable

_____

*Inc.*, No. 07-cv-266 (D. Del, Dec. 18, 2007)) *with* Seiren' s Amended Answer To First Amended Complaint, attached to Seiren's Motion for Leave to File an Amended Answer to First Amended Complaint as Exhibit A.

conduct themselves. If the patents were found invalid and unenforceable in the Schlegel litigation, they would be unenforceable against all others as well. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971) (holding that once a patent's claims are held to be invalid, an unrelated party who is sued for infringement of those claims may benefit from the previous ruling of invalidity due to collateral estoppel); *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379-82 (Fed. Cir. 1999) ("An unrelated accused infringer may likewise take advantage of an unenforceability decision under the collateral estoppel doctrine.").

Furthermore, had the parties sought to extend the deadline to amend the pleadings in the April 25, 2008 Scheduling Order, the new date would likely have been in mid-August of 2008, approximately three months before the close of discovery. This would have been similar to the deadline in the original Order). Zippertubing and Seiren initiated the present discussion with Parker at the end of July 2008, but Parker did not respond until August 12, nearly two weeks later. Thus, the present motion is both timely and apposite.[11]

### CONCLUSION

For all of the reasons above, Seiren's motion to amend its Answer to preserve the defendants' previously-pled inequitable conduct defense should be granted.

---

[11]    For all of the reasons explained above, Seiren has also satisfied the "good cause" standard under Rule 16(b)(4), Fed. R. Civ. P., for modifying the current Scheduling Order. *See e.g., Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.,* 2007 WL 1670387, at *1 (D. Del. June 7,2007) (" [C]ourts often evaluate whether a movant has shown good cause by considering the movant' s articulated reasons under the Rule 15 standard." ); *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003) (finding that the " good cause" standard was satisfied because there was no undue delay or likelihood of prejudice under Rule 15). In particular, there is surprise here because the proposed amendment incorporates the same inequitable conduct defense pled on December 18, 2007 in the Schlegel litigation. Moreover, it did not become clear until recently that the Schlegel litigation was not on the same trial track – and the status of that case is still unresolved.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendant Seiren Co., Ltd.*

OF COUNSEL:

Scott M. Daniels
Ken-Ichi Hattori
Michael J. Caridi
WESTERMAN, HATTORI, DANIELS
  & ADRIAN, LLP
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC  20036
(202) 822-1100

August 25, 2008
2459518

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2008 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Rudolf E. Hutz, Esquire
>Francis DiGiovanni, Esquire
>CONNOLLY BOVE LODGE & HUTZ LLP

I further certify that I caused to be served copies of the foregoing document on

August 25, 2008 upon the following in the manner indicated:

### <u>BY E-MAIL</u>

>Rudolf E. Hutz, Esquire
>Francis DiGiovanni, Esquire
>Connolly Bove Lodge & Hutz LLP
>The Nemours Building
>1007 N. Orange Street
>Wilmington, DE  19801


*/s/ Julia Heaney*

_____

Julia Heaney (#3052)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PARKER-HANNIFIN CORPORATION and )
PARKER INTANGIBLES, LLC, )
)
     Plaintiffs, )
)
   v. )  C.A. No. 07-104 (MPT)
)
SEIREN CO., LTD., )
)
     Defendant. )

## AMENDED ANSWER AND COUNTER-CLAIM BY DEFENDANT SEIREN CO., LTD.

Defendant Seiren Co., Ltd. ("Seiren") hereby answers the First Amended Complaint of

Plaintiff Parker Hannifin Corporation ("Parker"), as follows:

1.  Seiren lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1 of the Complaint, and therefore denies the same.

2.  Seiren lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 1 of the Complaint, and therefore denies the same.

3.  Seiren admits the allegations contained in Paragraph 3 of the Complaint.

### JURISDICTION AND VENUE

4.  Seiren admits the allegations of Paragraph 4 of the Complaint.

5.  Seiren admits the allegations of Paragraph 5 of the Complaint.

### THE PATENTS

6.  Seiren admits that U.S. Patent No. 6,387,523 ("the'523 patent") issued on May 14,

2002, but denies that the '523 patent issued duly or legally.  With respect to the remaining

allegations of this Paragraph, Seiren is without sufficient information to admit or deny and

therefore denies the same.

7.    Seiren admits that U.S. Patent No. 6,521,348 ("the '348 patent") issued on February 18, 2003, but denies that the '348 patent issued duly or legally.  With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

8.    Seiren admits that U.S. Patent No. 6,716,536 ("the '536 patent") issued on April 6, 2004, but denies that the '536 patent issued duly or legally.  With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

9.    Seiren admits that U.S. Patent No. 6,777,095 ("the '095 patent") issued on August 17, 2004, but denies that the '095 patent issued duly or legally.  With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

10.    Seiren admits that U.S. Patent No. 6,248,393 ("the '393 patent") issued on June 19, 2001, but denies that the '393 patent issued duly or legally.  With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

## PATENT INFRINGEMENT

11.    Seiren denies each and every allegation of Paragraph 11 of the Complaint.

12.    Seiren denies each and every allegation of Paragraph 12 of the Complaint.

## AFFIRMATIVE DEFENSES
### First Affirmative Defense

13.    Seiren has not infringed any of the claims of the '523 patent, the '348 patent, the '536 patent, the '095 patent, or the '393 patent, either directly or by inducing or contributing to their

infringement by others.

## Second Affirmative Defense

14.    The '523 patent, the '348 patent, the '536 patent, the '095 patent and the '393 patent are each invalid because they fail to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

## Third Affirmative Defense

15.    The '523 patent, the '348 patent, the '536 patent, the '095 patent and the '393 patent are invalid as a result of obviousness-type double patenting.

## Fourth Affirmative Defense

16.    Parker is estopped by virtue of amendments and statements made during the course of prosecution of the '523 patent, the '348 patent, the '536 patent, the '095 patent, and the '393 patent from obtaining any construction of the claims of the patents that could cover any of Seiren's products and the methods by which those products are made.

## Fifth Affirmative Defense

17.    On information and belief, Parker has failed to comply with the provisions of 35 U.S.C. § 287.

## Sixth Affirmative Defense

18.    Upon information and belief, Parker's '523, '348, '536 and '095 patents ("Parker Patents") are unenforceable, because of at least three instances of inequitable conduct by applicants in the United States Patent and Trademark Office ("PTO" or "Patent Office"), each of which separately, independently and collectively establishes a basis for unenforceability. The particular bases for the inequitable conduct defenses are as follows:

a.    Erma Cameron was the PTO examiner ("Examiner Cameron") for all of the applications leading to the Parker Patents (hereinafter the applications leading to and the resultant Parker Patents are collectively referred to as the "Cameron Applications").

b.    John A. Molnar, Jr. ("Molnar") was the prosecuting attorney for each of the Cameron Applications,

c.    Michael H. Bunyan ("Bunyan") and William I. Flanders ("Flanders") are the named inventors in each of the Cameron Applications.

d.    Upon information and belief, Molnar, Bunyan, and Flanders were at all times during the prosecution of these applications employed by Parker-Hannifin Corporation.

e.    The history and relationship of the Cameron Applications is as follows:

The '523 patent issued on May 14, 2002 as the result of patent application No. 09/883,785 filed on June 18, 2001 as a continuation of patent application No. 09/250,338 filed on February 16, 1999, now U.S. Pat. No. 6,248,393 ("the '393 patent"), and claiming priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '348 patent issued on February 18, 2003 as the result of patent application No. 10/142,803 filed on May 9,2002 as a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,428,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '536 patent issued April 6, 2004 as the result of patent application No.  10/318,609 filed on December 11, 2002 as a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338,

filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '095 patent issued August 17, 2004 as the result of patent application No. 10/753,016 filed on January 7,2004 as a continuation of application No. 10/318,609, filed on December 11, 2002, now Pat. No. 6,716,536, which is a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The application sequence is shown in the following chart:



Provisional Patent App. Serial No. 60/076,370
Filed Feb. 27, 1998

↓
(converted)
↓

Patent App. Serial No. 09/250,338
Filed Feb. 16, 1999
(issued as '393 patent on June 19, 2001)

↓
(continuation)
↓

Patent App. Serial No. 09/883,785
Filed June 18, 2001
(issued as '523 patent on May 14, 2002)

↓
(continuation)
↓

Patent App. Serial No. 10/142,803
Filed May 9, 2002
(issued as '348 patent on Feb. 18, 2003)

↓
(continuation)
↓

Patent App. Serial No. 10/318,609
Filed Dec. 11, 2002
(issued as '536 patent on Apr. 6, 2004)

↓
(continuation)
↓

Patent App. Serial No. 10/753,016
Filed Jan. 7, 2004
(issued as '095 patent on Aug. 17, 2004)

f.      At the time the first Cameron Application was filed, the PTO regulations, 37

C.F.R. § 1.56 (1992), provided in part, as follows:

Section 1.56 Duty to disclose information material to patentability.

- 6 -

(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by Secs. 1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

   (1) Prior art cited in search reports of a foreign patent office in a counterpart application, and

   (2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

   (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

   (2) It refutes, or is inconsistent with, a position the applicant takes in:

   (i) Opposing an argument of unpatentability relied on by the Office, or

   (ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

(1) Each inventor named in the application;

(2) Each attorney or agent who prepares or prosecutes the application; and

(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

g.    The above provisions of Rule 56 continue to this day, and Rule 56 has been amended only to add an additional sub-section (e) [65 FR 54666, Sept. 8,2000], which provides:

(e) In any continuation-in-part application, the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available    between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

h.    Hereinafter, the terms "Applicant" or "Applicants" means anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. **5** 1.56, including Molnar, Bunyan, Flanders and any other person substantively involved in the preparation or prosecution of one or more of the Cameron Applications.

i.    On October 22, 1998, in addition to the Cameron Applications, Applicants filed provisional application No. 60/105,271. This provisional was converted into application No. 09/412,059 on October 4, 1999. The prosecuting attorney on behalf of Parker was Molnar and the named inventor was Bunyan. The PTO examiner for these applications was Duc Truong (Examiner Troung). This application issued on June 25, 2002 as U.S. Patent No. 6,410,137 ("the '137 Patent"). Collectively this provisional, the converted application, and the '137 Patent will be referred to hereinafter as "Truong Application."

j.    The timeline of the Applicants' Cameron and Truong Applications are as follows:

| Cameron Applications Timeline | Truong Application Timeline |
| --- | --- |

| | |
|---|---|
| Feb. 27, 1998<br>Filed Provisional Patent App.<br>Serial No, 60/076,370<br><br>Feb. 16, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '393 patent on June 19, 2001)<br><br>June 18, 2001<br>Filed continuation Patent App.<br>Serial No. 091883,785<br>(issued as '523 patent on May 14, 2002)<br><br>May 9, 2002<br>Filed continuation Patent App.<br>Serial No. 10/142,803<br>(issued as '348 patent on Feb. 18, 2003)<br><br>Dec. 11, 2002<br>Filed continuation Patent App.<br>Serial No. 10/318,609<br>(issued as '536 patent on Apr. 6,2004)<br><br>Jan. 7, 2004<br>Filed continuation Patent App.<br>Serial No. 101/753,016<br>(issued as '095 patent on Aug. 17, 2004) | Oct. 22, 1998<br>Filed Provisional Patent App.<br>Serial No. 60/105,271<br><br>Oct. 4, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '137 patent on June 25, 2002) |

k.      The Truong Application, as filed October 22, 1998, characterized the invention as

follows:

> [T]he present invention is directed to an intumescent, flame-retardant pressure
> sensitive adhesive (PSA) composition particularly adapted for use in foil or
> fabric-over-foam EM1 shielding gasket constructions for bonding an electrically
> conductive foam or fabric sheath or jacket to a polyurethane or other foam core. . .
> . Gaskets of such construction advantageously have been observed to achieve a
> UL94 rating of V-0 over a range of cross-section

('137 patent, Col. 3 lines 27-42).

1.      The above statement of the invention from the Truong Application is nearly

identical to the statement of the invention from the Cameron Applications:

The present invention is directed to an electrically-conductive, flame retardant material for use in fabric-over-foam EM1 shielding gaskets, and to a method of manufacturing the same. In having a layer of a flame retardant coating applied to one side of an electrically-conductive, generally porous fabric, the material of the invention affords UL94 V-0 protection when used as a jacketing in a fabric-overfoam gasket construction.

('393 patent, Col. 3 lines 25-32).

m.      The Cameron Applications define "flame retardant" gaskets as those "achieving a rating of V-0 under UL Std. No. 94, 'Tests for Flammability of Plastic Materials for Parts in Devices and Appliances' (1991)."

n.      The Truong and Cameron Applications are both directed to an EMI shielding material that meets the Underwriters Laboratory 94 V-0 vertical burn rating standard for flame retardance ("UL 94 V-0") by applying a layer with flame retardant additives between an exterior conductive fabric/sheath and an interior foam core.

o.      This similarity, standing alone, makes the Truong Application material information to the prosecution of the Cameron Applications that should have been disclosed to the PTO.

p.      Upon information and belief, the existence of the co-pending Truong Application was never disclosed to Examiner in the Cameron Applications.

q.      The Truong Application further discloses that a "unique combination of flame retardant additives" is required to achieve a rating of V-0 under UL Std. No. 94**.** The three components of this mixture are:

"a halogenated first flame retardant component, an metal oxide-based second flame retardant component, and a filler component of expandable, intercalated graphite particles."

('137 patent, Col. 3 lines 52-55).

r.    The Truong Application further teaches that it was "unexpected" that this three

part mixture was "critical" to achieve a UL 94 V-0 rating:

> [t]he, . . results confirm that the EM1 shielding material of the present invention is
> UL94 V-0 compliant when used as a jacketing in a fabric-over-foam gasket
> construction. Unexpectedly, it was found that the use of a unique combination of
> three different flame retardant additives was critical in the use of any of the
> additives alone or without one of the other additives was insufficient to meet the
> required UL-VO criteria.

('137 patent, Col. 12, lines 21-28).   On January 25, 2002, Molnar filed an Amendment and

Response in which he distinguished certain prior art on the sole basis that the prior art did not

disclose the graphite component and further argued, as a basis for patentability, that:

> [u]nexpectedly, it has been observed that such flame retardant additive
> combination functions synergistic. In this regard, each of the components
> separately has been observed not to impart flame retardancy to the PSA
> composition effective to achieve UL 94 V-0 protection within a fabric or foil over
> foam EM1 shielding gasket construction.

s.    The above representation in the Truong Application manifests that Applicants not

only knew that a special three-part mixture was critical to achieving a UL-V-O rating, but that

Applicants possessed test data and results, as of October 22, 1998, which demonstrated that

halogenated or metal-oxide based flame retardant additives in the interior layer between the

fabric/sheath and foam, individually or in combination with each other, were insufficient to

produce a product meeting the UL 94 V-0 criteria. The above data and results identified in the

Truong Application is hereafter referred to as the "Test Results."

t.    Despite the representation in the Truong Application that a graphite-based

chemical mixture of flame retardant additives was necessary to achieve a V-0 rating, the

Applicants' subsequent February 16, 1999 application, Serial No. 09/250,338, and subsequent

Cameron Applications do not mention graphite and do not disclose that graphite was necessary

to achieve a V-0 rating. In direct contradiction to their representations in the Truong Application,

- 11 -

Applicants represented in the Cameron Applications that only a single flame retardant additive was required to obtain the preferred results:

> Flame retardancy may be imparted by loading the emulsion with . . . one or more conventional flame retardant additives such as aluminum hydrate, antimony trioxide, phosphate esters, or halogenated compounds such as polybrominated diphenyl oxides.

('393 patent, Col. 6, lines 59-63).

u.    Further, despite Applicants' representation in the Truong Application regarding Applicants' Test Results, their subsequent February 16, 1999 application, Serial No. 09/250,338, and subsequent Cameron Applications do not disclose that formulations without graphite failed to achieve a V-0 rating.

v.    The Test Results are inconsistent with the Cameron Applications that describe "preferred formulations" without mentioning either graphite or that a three-part formulation was critical for UL-VO rating. The Test Results were undisclosed even though the Cameron Applications included at least three issued claims directed to the chemical composition of the interior layer:

> wherein said one or more flame retardant additives are selected from the group consisting of aluminum hydrate, antimony trioxide, phosphate esters, and halogenated compounds.

('348 patent claim 18; '536 patent claim 9; and '095 patent claim 9).

w.    The disclosure of the three-part formulation in the Truong Application and the Test Results should have been disclosed to the Examiner in the Cameron Applications, because such information would have been considered important by a reasonable examiner in determining issues of patentability, including whether Applicants had met the enablement and best mode requirements of 35 U.S.C. §112.

x.      In an August 7, 2001 Office Action in the Truong Application, the Patent Office

rejected all pending claims in view of a prior art patent to Petras, U.S. Patent No. 4,061,826

(hereinafter "the Petras Prior Art"). The Petras Prior Art discloses the use of both halogenated

and a metal oxide flame retardant additives in a coating to impart flame retardance to an EMI

shielding material. Examiner Truong explained:

> Claims 1-27 are rejected under 35 U.S.C. 103(a) as being unpatentable over
> Petras et al in view of Krassowski . . , Petras discloses halogen containing flame
> retardant pressure sensitive adhesive tapes can be used to cover certain magnet
> wire wound components of electrical or electronic equipment. . . . The reference
> further discloses othe [sic] additives . . . such as antimony oxide.

On January 25, 2002, Molnar filed an Amendment and Response in which he distinguished the

Petras Prior Art on the sole basis that it does not disclose the graphite component of the flame

retardant composition.

y.      In view of the fact that another examiner had rejected claims in a related

application based on the Petras Prior Art, Petras was clearly material information to the

prosecution of the Cameron Applications that should have been disclosed to the PTO. Petras was

not cumulative to any other information before the Examiner, and it discloses EMI shielding

material with flame retardance imparted by a coating that includes halogenated and metal oxides

flame retardant additives as claimed in at least some of the pending and issued claims of the

Cameron Applications.

z.      The Petras Prior Art was never disclosed in the Cameron Applications.

aa.     Despite the materiality of the Truong Application, the Test Results, and the Petras

Prior Art, Applicants did not disclose this material information. Upon information and belief,

Applicants failures to disclose the Truong Application, the Test Results, and the Petras Prior Art,

were done with deceptive intent, or, at least, with such gross negligence as to be equivalent to deceptive intent.

bb.    Each of the Parker Patents is unenforceable in view of the conduct set forth above.  Each of the breaches of the Applicants' duty of good faith and candor, individually and collectively, constitute a basis for rendering unenforceable each of the Parker Patents, and the totality of Applicants' conduct demonstrates inequitable conduct. Each Parker Patent after the first is further unenforceable in view of the infectious unenforceability of the inequitable conduct during the course of the prosecution of the Cameron Applications.

## RESERVATION OF RIGHTS

19.    Seiren is still investigating this matter and has not yet had an opportunity to conduct any discover, and therefore reserves the right to raise such additional defenses as may be appropriate upon further investigation and discovery.

**WHEREFORE,** Seiren prays as follows:

A.    That Parker take nothing by reason of its Complaint, and that judgment be entered for Seiren;

B.    That the '523 patent, the '348 patent, the '536 patent, the '095 patent and the '393 patent and each and every claim thereof be adjudged to be invalid and the Seiren be adjudged not to infringe such patent;

C.    That the Court declare this an exceptional case and award Seiren its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

D.    That the Court grant such other and further relief as it deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Seiren hereby demands a trial by jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendant Seiren Co., Ltd.*

OF COUNSEL:

Scott M. Daniels
Ken-Ichi Hattori
Michael J. Caridi
WESTERMAN, HATTORI, DANIELS
  & ADRIAN, LLP
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC  20036
(202) 822-1100

August 25, 2008
2459560

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARKER HANNIFIN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-104-MPT |
| v. | ) |
| | ) DEMAND FOR JURY TRIAL |
| SEIREN CO., LTD., | ) |
| | ) |
| Defendant. | ) |
| | ) |

### AMENDED ANSWER ~~AND COUNTER-CLAIM BY~~OF DEFENDANT SEIREN CO., ~~LTD.~~ TO
### THE FIRST AMENDED COMPLAINT

Defendant Seiren Co., Ltd. ("Seiren") hereby answers the First

Amended Complaint of Plaintiff Parker Hannifin Corporation ("Parker"), as follows:

1.    Seiren lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 1 of the Complaint, and therefore denies the

same.

2.    Seiren lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 1 of the Complaint, and therefore denies the

same.

3.    Seiren admits the allegations contained in Paragraph 3~~2~~ of the Complaint.

### JURISDICTION AND VENUE

~~4.    Seiren admits the allegations of Paragraph 3 of the Complaint.~~

4.    Seiren admits the allegations of Paragraph 4 of the Complaint.

5.    Seiren admits the allegations of Paragraph 5 of the Complaint.

**THE PATENTS**

6.      Seiren admits that U.S. Patent No. 6,387,523 ("the '523 patent") issued on May 14, 2002, but denies that the '523 patent issued duly or legally. With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

7.      Seiren admits that U.S. Patent No. 6,521,348 ("the '348 patent") issued on February 18, 2003, but denies that the '348 patent issued duly or legally. With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

8.      Seiren admits that U.S. Patent No. 6,716,536 ("the '536 patent") issued on April 6, 2004, but denies that the '536 patent issued duly or legally. With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

9.      Seiren admits that U.S. Patent No. 6,777,095 ("the '095 patent") issued on August 17, 2004, but denies that the '095 patent issued duly or legally. With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

10.      Seiren admits that U.S. Patent No. 6,248,393 ("the '393 patent") issued on June 19, 2001, but denies that the '393 patent issued duly or legally. With respect to the remaining allegations of this Paragraph, Seiren is without sufficient information to admit or deny and therefore denies the same.

**PATENT INFRINGEMENT**

11.      Seiren denies each and every allegation of Paragraph 11~~10~~ of the Complaint.

2

12.     Seiren denies each and every allegation of Paragraph 12~~11~~ of the Complaint.

## AFFIRMATIVE DEFENSES
### First Affirmative Defense

13.     Seiren has not infringed any of the claims of the '523 patent, the '348 patent, the '536 patent, the '095 patent, or the '393 patent, either directly or by inducing or contributing to their infringement by others.

### Second Affirmative Defense

14.     The '523 patent, the '348 patent, the '536 patent, the '095 patent and the '393 patent are each invalid because they fail to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

### Third Affirmative Defense

15.     The '523 patent, the '348 patent, the '536 patent, the '095 patent and the '393 patent are invalid as a result of obviousness-type double patenting.

### Fourth Affirmative Defense

16.     Parker is estopped by virtue of amendments and statements made during the course of prosecution of the '523 patent, the '348 patent, the '536 patent, the '095 patent, and the '393 patent from obtaining any construction of the claims of the patents that could cover any of Seiren's products and the methods by which those products are made.

### Fifth Affirmative Defense

17.     On information and belief, Parker has failed to comply with the provisions of 35 U.S.C. § 287.

## **Sixth Affirmative Defense**

18.        Upon information and belief, Parker's '523, '348, '536 and '095 patents ("Parker Patents") are unenforceable, because of at least three instances of inequitable conduct by applicants in the United States Patent and Trademark Office ("PTO" or "Patent Office"), each of which separately, independently and collectively establishes a basis for unenforceability. The particular bases for the inequitable conduct defenses are as follows:

        a.        Erma Cameron was the PTO examiner ("Examiner Cameron") for all of the applications leading to the Parker Patents (hereinafter the applications leading to and the resultant Parker Patents are collectively referred to as the "Cameron Applications").

        b.        John A. Molnar, Jr. ("Molnar") was the prosecuting attorney for each of the Cameron Applications,

        c.        Michael H. Bunyan ("Bunyan") and William I. Flanders ("Flanders") are the named inventors in each of the Cameron Applications.

        d.        Upon information and belief, Molnar, Bunyan, and Flanders were at all times during the prosecution of these applications employed by Parker-Hannifin Corporation.

        e.        The history and relationship of the Cameron Applications is as follows:
                The '523 patent issued on May 14, 2002 as the result of patent application No.

4

09/883,785 filed on June 18, 2001 as a continuation of patent application No. 09/250,338 filed on February 16, 1999, now U.S. Pat. No. 6,248,393 ("the '393 patent"), and claiming priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '348 patent issued on February 18, 2003 as the result of patent application No. 10/142,803 filed on May 9, 2002 as a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,428,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '536 patent issued April 6, 2004 as the result of patent application No. 10/318,609 filed on December 11, 2002 as a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The '095 patent issued August 17, 2004 as the result of patent application No. 10/753,016 filed on January 7,2004 as a continuation of application No. 10/318,609, filed on December 11, 2002, now Pat. No. 6,716,536, which is a continuation of application No. 10/142,803, filed on May 9, 2002, now Pat. No. 6,521,348, which is a continuation of application No. 09/883,785, filed on June 18, 2001, now Pat. No. 6,387,523, which is a continuation of application No. 09/250,338, filed on February 16, 1999, now Pat. No. 6,248,393, which claims priority from provisional application No. 60/076,370 filed on February 27, 1998.

The application sequence is shown in the following chart:

```
┌─────────────────────────────────────────────────┐
│   Provisional Patent App. Serial No. 60/076,370  │
│                Filed Feb. 27, 1998                │
└─────────────────────────────────────────────────┘
                        ↓
                   (converted)
                        ↓
┌─────────────────────────────────────────────────┐
│        Patent App. Serial No. 09/250,338         │
│                Filed Feb. 16, 1999               │
│        (issued as '393 patent on June 19, 2001)  │
└─────────────────────────────────────────────────┘
                        ↓
                  (continuation)
                        ↓
┌─────────────────────────────────────────────────┐
│        Patent App. Serial No. 09/883,785         │
│                Filed June 18, 2001               │
│        (issued as '523 patent on May 14, 2002)   │
└─────────────────────────────────────────────────┘
                        ↓
                  (continuation)
                        ↓
┌─────────────────────────────────────────────────┐
│        Patent App. Serial No. 10/142,803         │
│                 Filed May 9, 2002                │
│        (issued as '348 patent on Feb. 18, 2003)  │
└─────────────────────────────────────────────────┘
                        ↓
                  (continuation)
                        ↓
┌─────────────────────────────────────────────────┐
│        Patent App. Serial No. 10/318,609         │
│                Filed Dec. 11, 2002               │
│        (issued as '536 patent on Apr. 6, 2004)   │
└─────────────────────────────────────────────────┘
                        ↓
                  (continuation)
                        ↓
┌─────────────────────────────────────────────────┐
│        Patent App. Serial No. 10/753,016         │
│                Filed Jan. 7, 2004                │
│        (issued as '095 patent on Aug. 17, 2004)  │
└─────────────────────────────────────────────────┘
```

      f.      At the time the first Cameron Application was filed, the PTO regulations,

37 C.F.R. § 1.56 (1992), provided in part, as follows:

Section 1.56 Duty to disclose information material to patentability.
(a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by Secs. 1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fiaud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:
        (1) Prior art cited in search reports of a foreign patent office in a counterpart application, and
        (2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
        (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
        (2) It refutes, or is inconsistent with, a position the applicant takes in:
            (i) Opposing an argument of unpatentability relied on by the Office, or
            (ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(c) Individuals associated with the filing or prosecution of a patent application

7

within the meaning of this section are:
      (1) Each inventor named in the application;
      (2) Each attorney or agent who prepares or prosecutes the application; and
      (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

      g.    The above provisions of Rule 56 continue to this day, and Rule 56 has been amended only to add an additional sub-section (e) [65 FR 54666, Sept. 8,2000], which provides:

      (e) In any continuation-in-part application, the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

      h.    Hereinafter, the terms "Applicant" or "Applicants" means anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. 5 1.56, including Molnar, Bunyan, Flanders and any other person substantively involved in the preparation or prosecution of one or more of the Cameron Applications.

      i.    On October 22, 1998, in addition to the Cameron Applications, Applicants filed provisional application No. 60/105,271. This provisional was converted into application No. 09/412,059 on October 4, 1999. The prosecuting attorney on behalf of Parker was Molnar and the named inventor was Bunyan. The PTO examiner for these applications was Duc Truong (Examiner Troung). This application issued on June 25, 2002 as U.S. Patent No. 6,410,137 ("the '137 Patent"). Collectively this provisional, the

converted application, and the '137 Patent will be referred to hereinafter as "Truong Application."

       j.    The timeline of the Applicants' Cameron and Truong Applications are as follows:

| Cameron Applications Timeline | Truong Application Timeline |
|---|---|
| Feb. 27, 1998<br>Filed Provisional Patent App.<br>Serial No. 60/076,370<br><br>Feb. 16, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '393 patent on June 19, 2001)<br><br>June 18, 2001<br>Filed continuation Patent App.<br>Serial No. 091883,785<br>(issued as '523 patent on May 14, 2002)<br><br>May 9, 2002<br>Filed continuation Patent App.<br>Serial No. 10/142,803<br>(issued as '348 patent on Feb. 18, 2003)<br><br>Dec. 11, 2002<br>Filed continuation Patent App.<br>Serial No. 10/318,609<br>(issued as '536 patent on Apr. 6,2004)<br><br>Jan. 7, 2004<br>Filed continuation Patent App.<br>Serial No. 101/753,016<br>(issued as '095 patent on Aug. 17, 2004) | Oct. 22, 1998<br>Filed Provisional Patent App.<br>Serial No. 60/105,271<br><br>Oct. 4, 1999<br>Patent App. Serial No. 09/250,338<br>(issued as '137 patent on June 25, 2002) |

     k.    The Truong Application, as filed October 22, 1998, characterized the invention as follows:

> [T]he present invention is directed to an intumescent, flame-retardant pressure sensitive adhesive (PSA) composition particularly adapted for use in foil or fabric-over-foam EM1 shielding gasket constructions for bonding an electrically conductive foam or fabric sheath or jacket to a polyurethane or other foam core. . . . Gaskets of such construction advantageously have been observed to achieve a UL94 rating of V-0 over a range of cross-section
>
> ('137 patent, Col. 3 lines 27-42).

     l.    The above statement of the invention from the Truong Application is nearly identical to the statement of the invention from the Cameron Applications:

> The present invention is directed to an electrically-conductive, flame retardant material for use in fabric-over-foam EM1 shielding gaskets, and to a method of manufacturing the same. In having a layer of a flame retardant coating applied to one side of an electrically-conductive, generally porous fabric, the material of the invention affords UL94 V-0 protection when used as a jacketing in a fabric-overfoam gasket construction.
>
> ('393 patent, Col. 3 lines 25-32).

     m.    The Cameron Applications define "flame retardant" gaskets as those "achieving a rating of V-0 under UL Std. No. 94, 'Tests for Flammability of Plastic Materials for Parts in Devices and Appliances' (1991)."

     n.    The Truong and Cameron Applications are both directed to an EMI shielding material that meets the Underwriters Laboratory 94 V-0 vertical burn rating standard for flame retardance ("UL 94 V-0") by applying a layer with flame retardant additives between an exterior conductive fabric/sheath and an interior foam core.

o.    This similarity, standing alone, makes the Truong Application material information to the prosecution of the Cameron Applications that should have been disclosed to the PTO.

p.    Upon information and belief, the existence of the co-pending Truong Application was never disclosed to Examiner in the Cameron Applications.

q.    The Truong Application further discloses that a "unique combination of flame retardant additives" is required to achieve a rating of V-0 under UL Std. No. 94. The three components of this mixture are:

> "a halogenated first flame retardant component, an metal oxide-based second flame retardant component, and a filler component of expandable, intercalated graphite particles."

('137 patent, Col. 3 lines 52-55).

r.    The Truong Application further teaches that it was "unexpected" that this three part mixture was "critical" to achieve a UL 94 V-0 rating:

> [t]he. . . results confirm that the EM1 shielding material of the present invention is UL94 V-0 compliant when used as a jacketing in a fabric-over-foam gasket construction. Unexpectedly, it was found that the use of a unique combination of three different flame retardant additives was critical in the use of any of the additives alone or without one of the other additives was insufficient to meet the required UL-VO criteria.

('137 patent, Col. 12, lines 21-28).  On January 25, 2002, Molnar filed an Amendment and Response in which he distinguished certain prior art on the sole basis that the prior art did not disclose the graphite component and further argued, as a basis for patentability, that:

> [u]nexpectedly, it has been observed that such flame retardant additive combination functions synergistic. In this regard, each of the components separately has been observed not to impart flame retardancy to the PSA composition effective to achieve UL 94 V-0 protection within a fabric or foil over foam EM1 shielding gasket construction.

s.    The above representation in the Truong Application manifests that Applicants not only knew that a special three-part mixture was critical to achieving a UL-V-O rating, but that Applicants possessed test data and results, as of October 22, 1998, which demonstrated that halogenated or metal-oxide based flame retardant additives in the interior layer between the fabric/sheath and foam, individually or in combination with each other, were insufficient to produce a product meeting the UL 94 V-0 criteria. The above data and results identified in the Truong Application is hereafter referred to as the "Test Results."

t.    Despite the representation in the Truong Application that a graphite-based chemical mixture of flame retardant additives was necessary to achieve a V-0 rating, the Applicants' subsequent February 16, 1999 application, Serial No. 09/250,338, and subsequent Cameron Applications do not mention graphite and do not disclose that graphite was necessary to achieve a V-0 rating. In direct contradiction to their representations in the Truong Application, Applicants represented in the Cameron Applications that only a single flame retardant additive was required to obtain the preferred results:

> Flame retardancy may be imparted by loading the emulsion with . . . one or more conventional flame retardant additives such as aluminum hydrate, antimony trioxide, phosphate esters, or halogenated compounds such as polybrominated diphenyl oxides.

12

('393 patent, Col. 6, lines 59-63).

u. Further, despite Applicants' representation in the Truong Application regarding Applicants' Test Results, their subsequent February 16, 1999 application, Serial No. 09/250,338, and subsequent Cameron Applications do not disclose that formulations without graphite failed to achieve a V-0 rating.

v. The Test Results are inconsistent with the Cameron Applications that describe "preferred formulations" without mentioning either graphite or that a three-part formulation was critical for UL-VO rating. The Test Results were undisclosed even though the Cameron Applications included at least three issued claims directed to the chemical composition of the interior layer:

wherein said one or more flame retardant additives are selected from the group consisting of aluminum hydrate, antimony trioxide, phosphate esters, and halogenated compounds.

('348 patent claim 18; '536 patent claim 9; and '095 patent claim 9).

w. The disclosure of the three-part formulation in the Truong Application and the Test Results should have been disclosed to the Examiner in the Cameron Applications, because such information would have been considered important by a reasonable examiner in determining issues of patentability, including whether Applicants had met the enablement and best mode requirements of 35 U.S.C. §112.

x. In an August 7, 2001 Office Action in the Truong Application, the Patent Office rejected all pending claims in view of a prior art patent to Petras, U.S. Patent No.

13

4,061,826 (hereinafter "the Petras Prior Art"). The Petras Prior Art discloses the use of both halogenated and a metal oxide flame retardant additives in a coating to impart flame retardance to an EMI shielding material. Examiner Truong explained:

> Claims 1-27 are rejected under 35 U.S.C. 103(a) as being unpatentable over Petras et al in view of Krassowski . . . Petras discloses halogen containing flame retardant pressure sensitive adhesive tapes can be used to cover certain magnet wire wound components of electrical or electronic equipment. . . . The reference further discloses othe [sic] additives . . . such as antimony oxide.

On January 25, 2002, Molnar filed an Amendment and Response in which he distinguished the Petras Prior Art on the sole basis that it does not disclose the graphite component of the flame retardant composition.

y.    In view of the fact that another examiner had rejected claims in a related application based on the Petras Prior Art, Petras was clearly material information to the prosecution of the Cameron Applications that should have been disclosed to the PTO. Petras was not cumulative to any other information before the Examiner, and it discloses EMI shielding material with flame retardance imparted by a coating that includes halogenated and metal oxides flame retardant additives as claimed in at least some of the pending and issued claims of the Cameron Applications.

z.    The Petras Prior Art was never disclosed in the Cameron Applications.

aa.    Despite the materiality of the Truong Application, the Test Results, and the Petras Prior Art, Applicants did not disclose this material information. Upon information and belief, Applicants failures to disclose the Truong Application, the Test

14

Results, and the Petras Prior Art, were done with deceptive intent, or, at least, with such gross negligence as to be equivalent to deceptive intent.

bb. Each of the Parker Patents is unenforceable in view of the conduct set forth above. Each of the breaches of the Applicants' duty of good faith and candor, individually and collectively, constitute a basis for rendering unenforceable each of the Parker Patents, and the totality of Applicants' conduct demonstrates inequitable conduct. Each Parker Patent after the first is further unenforceable in view of the infectious unenforceability of the inequitable conduct during the course of the prosecution of the Cameron Applications.

## RESERVATION OF RIGHTS

19. Seiren is still investigating this matter and has not yet had an opportunity to conduct any discover, and therefore reserves the right to raise such additional defenses as may be appropriate upon further investigation and discovery.

**WHEREFORE,** Seiren prays as follows:

A. That Parker take nothing by reason of its Complaint, and that judgment be entered for Seiren;

B. That the '523 patent, the '348 patent, the '536 patent, the '095 patent and the '393 patent and each and every claim thereof be adjudged to be invalid and the Seiren be adjudged not to infringe such patent;

C. That the Court declare this an exceptional case and award Seiren its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

D. That the Court grant such other and further relief as it deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Seiren hereby demands a trial by jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
jblumenfeld@mnat.com
*Attorneys for Defendant*
*Seiren Co., Ltd.*

*Of Counsel*                    ~~Seiren Co., Ltd.~~

Scott M. Daniels
Ken-Ichi Hattori
Michael J. Caridi
WESTERMAN, HATTORI, DANIELS
  & ADRIAN, LLP
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
Telephone: (202) 822-1100

16