# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PARKER-HANNIFIN CORPORATION, and )
PARKER INTANGIBLES, LLC, )
                          )
        Plaintiffs, )
                          )
        v. )      C.A. No. 1:07-cv-104-MPT
                          )
SEIREN CO., LTD., )
                          )
        Defendant. )

## PLAINTIFFS' ANSWERING BRIEF TO SEIREN CO., LTD.'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO FIRST AMENDED COMPLAINT

CONNOLLY BOVE LODGE & HUTZ LLP,
Rudolf E. Hutz (#484)
Francis DiGiovanni (#3189)
Steven A. Nash (PA #85707 - admitted *pro hac vice*)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19801
Tel:  (302) 658-9141
Fax:  (302) 658-5614
*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.      Background and Statement of Facts ..................................................... 1

II.     Summary of Argument ....................................................................... 2

III.    Legal Standards ................................................................................. 4

        A.      Futility .................................................................................. 4

        B.      Heavy Burden of Proving Inequitable Conduct ........................... 5

        C.      Materiality ............................................................................. 5

                1.      Prior Art ..................................................................... 6

                2.      Enablement ................................................................. 6

                3.      Best Mode ................................................................... 7

        D.      Intent .................................................................................... 7

        E.      Standards for Imputing Inequitable Conduct to a Patent Based
                on Conduct Relating to a Different Patent ................................. 8

IV.     Argument ......................................................................................... 9

        A.      The '137 Patent, Three-Part Combination, and Test Results are
                Not Material As a Matter of Law .............................................. 9

                1.      Enablement ................................................................. 10

                        a.      The Disclosure of the '137 Patent is not Material ................. 10

                        b.      The Three-Part Combination and Test Results Are
                                not Material ........................................................... 11

                        c.      The Three-Part Combination, Test Results and
                                Statements Concerning them Are not
                                Misrepresentations With Respect to the Patents-in-
                                Suit ...................................................................... 12

                        d.      The Statements of the '137 Patent Regarding the
                                Three-Part Combination and Test Results are not
                                Material to Enablement of the Patents-in-Suit ......................... 13

                2.      Best Mode ................................................................... 14

B.      Seiren Cannot Show the Requisite Level of Intent to Support an Inequitable Conduct Claim with Respect to the '137 Theory and Three-Part Combination Theory ................................................................ 16

C.      The Petras Theory is Legally Deficient ...................................................... 17

        a.      Petras is Not Material.................................................................. 17

        b.      Petras is Cumulative of Admitted Prior Art............................... 19

V.      Conclusion ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Al-Site Corp. v. VSI Int'l, Inc.*,
  902 F. Supp. 1551 (S.D. Fla. 1995) .................................................... 7, 14, 16

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006) ................................................................ 4, 9

*Baxter Int'l, Inc. v. McGaw, Inc.*,
  149 F.3d 1321 (Fed. Cir. 1998) ........................................................... 8, 13

*Beauregard v. Mega Systems, LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) ............................................................ 9

*Bruning v. Hirose*,
  161 F.3d 681 (Fed. Cir. 1998) ............................................................. 7, 14

*CFMT, Inc. v. YieldUp Int'l Corp.*,
  349 F.3d 1333 (Fed. Cir. 2003) ............................................................ 7

*Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*,
  910 F.2d 804 (Fed. Cir. 1990) ............................................................. 9

*Digital Control Inc. v. Charles Mach. Works*,
  437 F.3d 1309 (Fed. Cir. 2006) ........................................................ 5, 7, 16

*Eaton Corp. v. Parker-Hannifin Corp.*,
  2003 U.S. Dist. LEXIS 1014 (D. Del. Jan. 24, 2003)................................... 8

*Foman v. Davis*,
  371 U.S. 178 (1962)......................................................................... 4

*Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*,
  819 F.2d 1100 (Fed. Cir. 1987) ......................................................... 18, 19

*Hazeltine Research, Inc. v. Brenner*,
  382 U.S. 252 (1965)......................................................................... 6

*Hoffman La Roche, Inc. v. Promega Corp.*,
  319 F. Supp. 2d 1011 (N.D. Cal. 2004) ................................................ 8, 9

*Hoffmann-La Roche, Inc. v. Promega Corp.*,
  323 F.3d 1354 (Fed. Cir. 2003) ............................................................ 5

*Impax Labs., Inc. v. Aventis Pharms., Inc.*,
  468 F.3d 1366 (Fed. Cir. 2006) ............................................................ 5

*In re Fine*,
  837 F.2d 1071 (Fed. Cir. 1988) ............................................................... 18

*In re Morris*,
  127 F.3d 1048 (Fed. Cir. 1997) ................................................................. 5

*In re Wands*,
  858 F.2d 731 (Fed. Cir.1988) ......................................................... 6, 10, 11

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005) ............................................................ 6, 10

*Lamb-Weston, Inc. v. McCain Foods*,
  78 F.3d 540 ................................................................................................ 6

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
  518 F.3d 1353 (Fed. Cir. 2008) .......................................................... 5, 9, 12

*Pharmacia Corp. v. Par Pharm.*,
  417 F.3d 1369 (Fed. Cir. 2005) ............................................................ 8, 13

*Saxton Products, Inc. v. United States Tel. Co.*,
  182 U.S.P.Q. 608, 1974 U.S. Dist. LEXIS 8963 (S.D.N.Y. 1974)................. 8

*Smith v. National Collegiate Athletic Ass'n*,
  139 F.3d 180 (3d Cir. 1999) ..................................................................... 4

*Transco Products, Inc. v. Performance Contracting, Inc.*,
  38 F.3d 551 (Fed. Cir. 1994) ..................................................................... 7

*Vision Metals, Inc. v. SMS Demag, Inc.*,
  311 B.R. 692 (Bankr. D. Del. 2004) ........................................................... 4

*Warner-Lambert Co. v. Teva Pharms.* USA,
  289 F. Supp.2d 515 (D.N.J. 2003) .............................................................. 4

**Statutes**

35 U.S.C. § 101 ................................................................................. 3, 5, 10

35 U.S.C. § 102 .............................................................................. 2, 5, 6, 10

35 U.S.C. § 102(e) ..................................................................................... 6

35 U.S.C. § 103 .................................................................................. 2, 5, 6

35 U.S.C. § 112 ................................................................................. 3, 5, 10

**Other Authorities**

*Chisum on Patents*, Vol. 3: §8.06[5][c] ............................................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 4

## I.    Background and Statement of Facts

Through its Motion for Leave to File an Amended Answer ("Motion"), Seiren proposes to add three (3) distinct theories of inequitable conduct: (1) Parker-Hannifin Corporation ("Parker") allegedly had a duty to disclose jointly owned U.S. Pat. No. 6,410,137 ("the '137 patent") or its precedent applications to the Patent Office in connection with prosecution of the patents-in-suit merely because of alleged similarity, "standing alone," between the subject matters of the '137 patent and the patents-in-suit (Motion Ex. A ¶18(o)); (2) Parker was allegedly obligated to disclose to the Patent Office the existence of a three-part combination of flame retardants described in the '137 patent ("the three-part combination") and certain test results ("test results") relating to same (Motion Ex. A ¶18(w)); and (3) Parker was allegedly obligated to disclose to the Patent Office U.S. Pat. No. 4,061,826 to Petras ("Petras") (Motion Ex. A ¶18(y)).  Because Parker did not cite the '137 patent, the three-part combination, the test results, or Petras to the Patent Office during prosecution of the patents-in-suit, Seiren asserts that the patents-in-suit are unenforceable due to inequitable conduct under all three theories.  These theories will be referred to as (1) "the '137 theory," (2) "the three-part combination theory," which includes the test results, and (3) "the Petras theory," respectively.[1]

The '137 patent is entitled "Intumescent, flame retardant pressure sensitive adhesive composition for EMI shielding applications," and relates to an intumescent adhesive.  '137 patent, abstract; '137 patent col. 1, ll. 11-15.  The term "intumescent"

---

[1] Although Seiren's proposed Amended Answer is entitled "Amended Answer and Counter-claim" (Motion Ex. A), Parker understands that the new inequitable conduct theories are presented only as affirmative defenses.  The words "and Counter-claim" are crossed out in the redline version.  Motion Ex. B.  Further, the numbered paragraphs of the proposed Answer do not include counter-claims.

means that a material will expand in volume when exposed to heat or flames so as to form a flame retardant barrier. '137 patent col. 8, ll. 22-28. The intumescent qualities to which the '137 patent is directed is achieved by adding a filler component of expandable, intercalated graphite particles. '137 patent col. 8, ll. 15-16. As explained in the '137 patent, "[s]uch particles, most typically flakes, i.e., platelets, are intercalated with a solution of sulfuric and nitric acid. Upon exposure to high temperatures of over about 300 degrees F . . . , such as within a flame environment, the treated flake expands volumetrically up to about 100 times or more its original thickness." '137 patent col. 8, ll. 22-28. The commercial embodiment of the '137 patent is Parker's Soft-Shield® 4000 series of foil-over-foam gaskets. *See* Declaration of Michael H. Bunyan ("Bunyan Decl.") ¶4.

The patents-in-suit, on the other hand, are directed to flame retardant EMI shielding gaskets. They are not directed to gaskets having intumescent qualities as taught by the '137 patent. The commercial embodiment of the patents-in-suit are Parker's Soft-Shield® 5000 series of fabric-over-foam gaskets. Bunyan Decl. ¶8.

## II.    Summary of Argument

Parker opposes the Motion on grounds that the '137 theory, the three-part combination theory, and the Petras theory are futile.

With respect to Seiren's first theory (the '137 theory), the subject matter of the '137 patent "standing alone" cannot be material to examination or patentability of the patents-in-suit, and thus cannot be the basis of an inequitable conduct claim. The '137 patent does not qualify as prior art to the patents-in-suit under any section of 35 U.S.C. §102 or §103 because the '137 patent was filed after the effective priority date of the

patents-in-suit. Thus, for Seiren to have any hope of succeeding on the '137 theory, it must prove that the '137 patent was material to one of the other limited requirements for patentability, e.g., utility, best mode, or enablement. 35 U.S.C. §§ 101, 112. Seiren has not asserted any relevance to utility. The '137 patent is not relevant to best mode or enablement of the patents-in-suit for the reasons explained immediately below in connection with Seiren's three-part combination theory.

In support of its second theory of inequitable conduct (the three-part combination theory), Seiren asserts that the three-part combination is necessary to practice the invention of the patents-in-suit, i.e., to achieve a V-0 rating (Motion Ex. A ¶18(s)-(w)); and thus, having not described the three-part combination, the patents-in-suit are not enabled and do not describe the best mode of practice. Contrary to these unfounded allegations, the three-part combination is not necessary for practicing the invention, nor is its use the best mode. In fact, Parker's commercial embodiment of the invention, Soft-Shield® 5000, does not use the three-part combination of the '137 patent. Rather, Soft-Shield® 5000 uses only brominated compounds and metal compounds as flame retardant compounds in the flame retardant coating. Bunyan Decl. ¶¶12-17. This is exactly the flame retardant combination described in the patents-in-suit. The true flame retardant formulation is adequately described so as to enable one of skill in the art how to make and use the invention, and represented the best mode contemplated by the inventors at the time the patents-in-suit were filed (and still today[2]). Seiren's proposed amended answer does not allege otherwise, and fails as a matter of law.

---

[2] In response to recent concerns about the use of halogenated compounds, Parker is researching non-halogenated flame retardant additives. *See* Bunyan Decl. ¶¶19-20.

The Petras theory similarly fails as a matter of law because Petras is not material to patentability of any claim in the patents-in-suit.  Moreover, Petras is cumulative of prior art admitted in the specifications of the patents-in-suit.

## III.    Legal Standards

### A.    Futility

Futility is an appropriate ground to justify denial of leave to amend a pleading. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).  Thus, if a proposed amendment would be futile, a district court should deny leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment is futile if the pleading, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.  *Smith v. National Collegiate Athletic Ass'n*, 139 F.3d 180, 190 (3d Cir. 1999), *vacated on other grounds*, 525 U.S. 459 (1999).  In determining whether the amendment would be futile, the district court applies the same standard of legal sufficiency as under Fed. R. Civ. P. 12(b)(6).  *Id.*

Put another way, "[f]utility of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue." *Vision Metals, Inc. v. SMS Demag, Inc.*, 311 B.R. 692, 701 (Bankr. D. Del. 2004). (citations omitted).  Grant or denial of leave to amend is in the discretion of the court.  *Id.*

In determining whether an amendment would be futile, the district court should consider the heavy burden a party alleging inequitable conduct must bear to establish materiality and intent to deceive.  *See Warner-Lambert Co. v. Teva Pharms. USA*, 289 F. Supp. 2d 515, 544-45 (D.N.J. 2003) (denying as futile motion for leave to amend to add claim of inequitable conduct).

4

### B.    Heavy Burden of Proving Inequitable Conduct

A party seeking to have a patent declared unenforceable has a heavy burden to meet. *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003). A patent will not be held unenforceable unless the party asserting inequitable conduct proves by clear and convincing evidence (1) affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information and (2) an intent to deceive the Patent Office. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1366 (Fed. Cir. 2008); *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1374 (Fed. Cir. 2006).

A finding of inequitable conduct requires a balancing of materiality and intent. *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006). Thus, where a reasonable examiner would merely have considered information important, but not crucial, to the decision on patentability, the requisite finding of intent must be high. *Id*. Where a higher level of materiality is shown, e.g., if the patent would not have issued but for a failure to cite information, a lesser showing of intent is required. *Id*.

### C.    Materiality

A reference may be material if a reasonable examiner would have considered it important in deciding the issue of patentability. *Pfizer*, 518 F.3d at 1366. The requirements for patentability are found in 35 U.S.C. §101 (utility), §102 (anticipation), §103 (obviousness), and §112 (best mode, enablement, written description). *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997).

### 1.    Prior Art

In order for a first patent application to qualify as prior art against a second, co-pending application, the first application must have an earlier filing date than the second application.  35 U.S.C. §102(e); *Lamb-Weston, Inc. v. McCain Foods*, 78 F.3d 540, 544 n.* (Fed. Cir. 1996) ("description in *prior* co-pending patent application" qualifies as prior art) (emphasis added) (quotations omitted).  This requirement applies whether the alleged prior art is anticipating under §102 or goes to obviousness under §103.  *Hazeltine Research, Inc. v. Brenner*, 382 U.S. 252, 255-56 (1965).  Thus, where a co-pending application is filed after the effective filing date of a patent at issue, it is not relevant to patentability as prior art under 35 U.S.C. §102 or §103.

### 2.    Enablement

The enablement requirement mandates that the patent specification enable those skilled in the art to make and use *the claimed invention* without undue experimentation. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1070 (Fed. Cir. 2005).  The factors that an examiner would consider in determining whether a specification meets the enablement requirement include: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.  *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Where a district court considers a failure to disclose test data relevant to enablement in the context of an inequitable conduct claim, the court should bear in mind the low standard of statutory enablement, as opposed to higher commercial standards of

6

enablement with regard to the relevance of the data. *CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003). Thus, test data showing that an invention does not meet commercial requirements is not necessarily material to patentabililty. *See Id.* (reversing district court as a matter of law on finding of unenforceability for failure to disclose test results during prosecution).

### 3.    Best Mode

Satisfaction of the best mode requirement requires that the inventor disclose the best mode of carrying out the invention known to him at the time the application is filed. *Bruning v. Hirose*, 161 F.3d 681, 686 (Fed. Cir. 1998). This is a subjective inquiry of what was known to the inventor at the time of filing. *Id.* In the case of subsequently filed continuing applications, there is no obligation to update the best mode after the original priority date, and the court should look to the time of the filing of the parent application to see if the inventor disclosed the best mode known to him/her at that time. *Al-Site Corp. v. VSI Int'l, Inc.*, 902 F. Supp. 1551, 1554 (S.D. Fla. 1995) (citing *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551 (Fed. Cir. 1994)) *rev'd in part on other grounds*, 174 F.3d 1308 (Fed. Cir. 1999).

### D.    Intent

Where the materiality of a reference is low, the party asserting inequitable conduct must prove a high degree of intent to deceive. *Digital Control*, 437 F.3d at 1315. The involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive. *CFMT*, 349 F.3d at 1342-43. "[E]ven gross negligence does not alone suffice to establish intent." *Id.* at 1242.

E.    **Standards for Imputing Inequitable Conduct to a Patent Based on Conduct Relating to a Different Patent**

Inequitable conduct with respect to a patent, if proven, can be imputed to another patent only under limited circumstances. Inequitable conduct charges are disfavored in the District of Delaware, and charges of "infectious inequitable conduct" are even more disfavored. *Eaton Corp. v. Parker-Hannifin Corp.*, 2003 U.S. Dist. LEXIS 1014, at *2 (D. Del. Jan. 24, 2003).

Inequitable conduct in obtaining one patent will not be imputed to another patent in common ownership even where the two patents cover related subject matter. *Saxton Products, Inc. v. United States Tel. Co.*, 182 U.S.P.Q. 608, 1974 U.S. Dist. LEXIS 8963, at *4 (S.D.N.Y. 1974); *see also Pharmacia Corp. v. Par Pharm.*, 417 F.3d 1369, 1375 (Fed. Cir. 2005) ("[T]his court's inequitable conduct cases do not extend inequitable conduct in one patent to another patent that was not acquired through culpable conduct."). The Federal Circuit has approved the theory of "infectious inequitable conduct" only when fraud used to procure an earlier patent justifies imputing unenforceability to a later patent in the same family. *See, e.g., Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) (holding that a divisional patent stemming from earlier tainted application was not infected with inequitable conduct). An immediate and necessary relationship is required for inequitable conduct affecting a patent to infect another patent. *Id.* at 1331-32.

An application of this principle in *Hoffman La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011 (N.D. Cal. 2004), held that inequitable conduct in a patent did not affect the others in suit. *Id.* at 1021-22. There, the court explained that something more than the mere relatedness of subject matter is needed to support a holding of unenforceability

8

of the other patents.  *Id.* at 1021 (citing *Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990)).

## IV.    Argument

Seiren's Motion should be denied because all of Seiren's newly presented theories of inequitable conduct are futile.  *See Arthur*, 434 F.3d at 204.  None of the '137 theory, the three-part combination theory, or the Petras theory are legally sufficient to form the basis of an inequitable conduct claim because none are material to the examination or patentability of the patents-in-suit.  Accordingly, Parker opposes granting leave for Seiren to amend its answer by adding these theories of inequitable conduct.

### A.    The '137 Patent, Three-Part Combination, and Test Results are Not Material As a Matter of Law

In order for the '137 patent, the three-part combination or the test results to be the basis for an inequitable conduct claim, they must be material to patentability.  *Pfizer*, 518 F.3d at 1366.  Thus, they must qualify as prior art or be relevant to some other requirement for patentability, such as utility, best mode or enablement.

As set forth in Seiren's proposed amended answer, the earliest effective filing date (and earliest possible priority date) of the application for the '137 patent was October 22, 1998.  Motion Ex. A ¶18(j).  The patents-in-suit have a priority date that is eight (8) months earlier, February 27, 1998.  *Id.*[3]

---

[3] Seiren does not dispute that the patents-in-suit are entitled to the priority date of February 27, 1998, and does not plead otherwise.  Allegations of inequitable conduct must be pled with particularity.  *Beauregard v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003).  Thus, to the extent that Seiren argues in reply to this opposition that an issue of fact exists over the disclosure of Parker's priority application, such argument should be dismissed because the proposed amended answer is insufficient as a matter of law.

Because the '137 patent was not filed until eight months after the patents-in-suit, it cannot as a matter of law constitute prior art to the patents-in-suit. 35 U.S.C. §102. Seiren does not plead that the '137 patent is relevant to the issues of utility or written description. Thus, the only patentability requirements that the '137 patent could possibly be relevant to are those of 35 U.S.C. § 112 relating to enablement and best mode.[4]

### 1.   Enablement

### a.   The Disclosure of the '137 Patent is not Material

In order for the '137 patent to be material to patentability under an enablement theory, it must be relevant to one of the *Wands* factors or some other credible theory of enablement. *In re Wands*, 858 F.2d at 737. Here, Seiren argues that the specifications of the patents-in-suit fail to teach one of skill in the art how to make and use a flame retardant coating that includes the three-part combination disclosed in the '137 patent. However, the three-part combination disclosed in the '137 patent is not relevant to the patents-in-suit. In considering the issue of enablement, the *Wands* factors are to be applied to determine if the disclosures of the patents-in-suit enable one of ordinary skill in the art how to make and use the inventions claimed in the patents-in-suit—not the invention claimed in the '137 patent. *Invitrogen*, 429 F.3d at 1070. The patents-in-suit include claims directed to flame retardant EMI shielding gaskets having a flame retardant coating on the inside surface of a conductive fabric. The claims of the patents-in-suit are not directed to a three-part combination of flame retardants, nor a gasket having an intumescent coating.

---

[4] Seiren does not dispute that the patents-in-suit meet the utility requirement of 35 U.S.C. §101 and the written description requirement of §112, and does not plead that the '137 patent is relevant to those issues.

When applying the *Wands* factors to the claims of the patents-in-suit, the inquiry is whether the specification would enable one of skill in the art to practice those claims without undue experimentation.  For example, the first three *Wands* factors are the quantity of experimentation necessary, the amount of direction or guidance presented, and the presence or absence of working examples.  *In re Wands*, 858 F.2d at 737.  The analysis of these factors is how much experimentation one would be required to undertake to produce an EMI shielding gasket having, for example, a "flame retardant layer comprising at least about 30% by weight of one or more flame retardant additives" ('536 patent claim 1, col. 11, ll. 2-4), the amount of guidance presented in the specification, and working examples regarding same.  In performing the analysis, a reasonable examiner would consider the detailed description and working example of the flame retardant coating found in the specifications of the patents-in-suit (*see, e.g.*, '536 patent col. 6, l. 62 – col. 7, l. 29; col. 9, l. 52 – col. 10, l. 17), and conclude that the first three *Wands* factors weigh heavily in favor of finding enablement fulfilled.  A similar analysis comparing the disclosure of the patents-in-suit with the claims of the same patents with respect to the other *Wands* factors would yield similar results.  The disclosure of the '137 patent, and the existence of the three-part combination and test results do not factor into the analysis, and all are irrelevant to the issue of enablement.

### b.  The Three-Part Combination and Test Results Are not Material

Based on the disclosure provided in the '137 patent, Seiren argues that the three-part combination (and test results) was critical to achieving a V-0 rating in an EMI shielding gasket.  Motion, Ex. A ¶¶ 18(r), (s).  Specifically, Seiren cites to statements in the '137 patent, such as, "it was found that the use of a unique combination of three

11

different flame retardant additives was critical" in an effort to show that the three-part combination was necessary to carry out the invention claimed in the patents-in-suit. *Id.*

The three-part combination (and test results regarding same) was critical to achieve a V-0 rating *in the application to which the '137 patent is directed*, i.e., in an intumescent coating. An intumescent coating is one that volumetrically expands under flame conditions. *See* '137 patent col. 8, ll. 22-28. The expandable, intercalated graphite particles are needed to achieve this goal of the invention described in the '137 patent. However, the graphite flakes alone are not enough to impart the V-0 rating sought in the '137 patent. Thus, all three flame retardant components: halogenated compounds, antimony compounds, and graphite particles, were needed to achieve a V-0 rating in the intumescent application of the '137 patent. Because the patents-in-suit are not directed to an intumescent material, the statements made in the '137 patent are not material to the patents-in-suit.

### c. The Three-Part Combination, Test Results and Statements Concerning them Are not Misrepresentations With Respect to the Patents-in-Suit

The statements made to the examiner during prosecution of the '137 patents were not misrepresentations, as would be required to support an inequitable conduct claim. *Pfizer*, 518 F.3d at 1366. As explained above, the statements made in support of patentability of the '137 patent were accurate and correct with respect to the intumescent application described in that patent.

However, even assuming that an issue of fact exists as to whether such statements constituted "misrepresentations," the statements could only affect the enforceability of the '137 patent—and not the patents-in-suit—as a matter of law. Thus, for example, even

if Seiren could theoretically prove a set of facts showing that the statements were false, i.e., that all three flame retardant compounds are not required in an intumescent application, the alleged misrepresentation in the '137 patent could not as a matter of law be imputed to the patents-in-suit. *Pharmacia Corp.*, 417 F.3d at 1375. The statements were not used to procure the patents-in-suit, and no culpability should be imputed to the patents-in-suit with respect to the statements. Further, because the statements related to achieving a V-0 rating in the intumescent application of the '137 patent, and not the EMI shielding gaskets of the patents-in-suit, the statements' subject matter does not have the "immediate and necessary relationship" to the patents-in-suit that is required for inequitable conduct affecting one patent to infect another patent. *Baxter Int'l*, 149 F.3d at 1331-32. Thus, regardless of how the Court views the statements of which Seiren complains, any inequitable conduct with respect to the '137 patent cannot as a matter of law infect the patents-in-suit.

> **d. The Statements of the '137 Patent Regarding the Three-Part Combination and Test Results are not Material to Enablement of the Patents-in-Suit**

The statements made to the Patent Office in connection with the '137 patent are not material to the issue of enablement with respect to the patents-in-suit. As explained above, the statements regarding the three-part combination and test results related to achieving a V-0 rating in the intumescent application of the '137 patent, where graphite particles are required to achieve intumescence. The use of graphite is not necessary for achieving a V-0 rating in the EMI shielding gaskets claimed in the patents-in-suit.

As explained, for example, in the '536 patent, the invention of the patents-in-suit can be achieved using only a two-part combination of flame retardants: a halogenated

compound (e.g., decabromodiphenyl oxide) and an antimony compound. '536 patent, col. 7, ll. 4-8. A commercial starting material, Heveatex 4129 FR, having this two-part combination was used in the working example disclosed in the patents. '536 patent, col. 9, ll. 53-56. EMI shielding gaskets made with this material were tested and found to earn the V-0 rating from Underwriters Laboratories. '536 patent, col. 10, ll. 23-30. Thus, the invention described in the patents-in-suit can indeed earn a V-0 rating without use of the three-part combination needed for intumescence in the '137 patent. Accordingly, any statements made to the Patent Office in connection with the intumescent application of the '137 patent is wholly irrelevant to enablement of the patents-in-suit.

### 2.     Best Mode

The '137 patent, three-part combination and test results are not material to the best mode requirement with respect to the patents-in-suit. When analyzing whether a patent meets the best mode requirement, an examiner should look to what the inventors knew at the time the patent was filed. *Bruning*, 161 F.3d at 686. In the case of patents issuing from continuing applications, the relevant time is the filing date of the earliest application. *Al-Site Corp.*, 902 F. Supp. at 1554. As admitted in Seiren's proposed amended answer, the earliest effective filing date of the patents-in-suit is February 27, 1998. Motion, Ex. A ¶18(e).

The best mode known to the inventors in February 1998 with respect to the flame retardant coating of the patents-in-suit was the use of a two-part combination of flame retardants. Bunyan Decl. ¶9; §IV.A.1.d., *supra*. In fact, the best mode known to the inventors at the actual time of filing of each of the patents-in-suit was the two-part combination, and the two-part combination is still the best mode contemplated, at least

14

until very recently. Bunyan Decl. ¶¶18-20. Parker's commercial embodiment of the patents-in-suit is Soft-Shield® 5000. Bunyan Decl. ¶8. The Soft-Shield® 5000 series of gaskets used the two-part flame retardant combination of brominated compounds and antimony compounds from its introduction in 1998 until 2006. Bunyan Decl. ¶12. When the European Union banned the use of the particular brominated compound used in Soft-Shield® 5000 in 2006, Parker switched to a single-part flame retardant, which was graphite, in the coating. Bunyan Decl. ¶¶13-14. However, the single-part graphite system did not work well, and Parker switched to a new graphite-free system shortly thereafter. Bunyan Decl. ¶¶15-16. The new system, which contained antimony oxide, a new brominated compound, and zinc bromate, is still in use today. Bunyan Decl. ¶16. The commercial embodiment of the patents-in-suit, Soft-Shield® 5000, has never used the three-part combination described in the '137 patent. Bunyan Decl. ¶17. Seiren does not dispute any of this.

As explained above, the use of graphite particles in combination with the brominated and antimony compounds, as described in the '137 patent, is only required if one desires to make an intumescent adhesive. Because the invention of the patents-in-suit are not required to have intumescent properties, the inclusion of graphite in the flame retardant layer is neither necessary nor desirable.

The best mode, two-part combination of flame retardant additives is fully described in the patents-in-suit. *See* §IV.A.1.d., *supra*. Seiren does not dispute that the two-part combination is adequately described in the patents-in-suit—only that it is not, in fact, the best mode. Even today, Parker uses the two-part combination in the products that it sells (with the addition of zinc bromate). Bunyan Decl. ¶16. Parker has had

15

almost ten (10) years since the filing date of the '137 patent to incorporate the intumescent adhesive described in that patent into the products it sells under the patents-in-suit had it desired to do so. However, Parker has not done so. As evidenced by the inclusion of the two-part combination in Parker's commercial embodiment, Seiren cannot succeed on its claim as a matter of law.

Moreover, the three-part combination disclosed in the '137 patent had not yet even been conceived, at least for use in a product, as of the earliest effective filing date of the patents-in-suit. Bunyan Decl. ¶6. Because the inventors of the patent-in-suit were not aware of the use of a three-part combination in any product until after their effective filing date, the three-part combination cannot represent the best mode for carrying out the inventions at the time the earliest application was filed. *Al-Site Corp.*, 902 F. Supp. at 1554.

**B.    Seiren Cannot Show the Requisite Level of Intent to Support an Inequitable Conduct Claim with Respect to the '137 Theory and Three-Part Combination Theory**

Even if the Court were to find that any of the '137 patent, three-part combination or test results were material to patentability of the patents-in-suit, the '137 theory and three-part combination theory must still fail as a matter of law because Seiren will be unable to show the requisite level of intent to deceive the Patent Office with respect to the patents-in-suit. For the reasons set forth above, any materiality as to the '137 patent, the three-part combination, or test results would be minimal at best. Thus, Seiren would be required to show a high level of intent. *Digital Control*, 437 F.3d at 1315.

At no time did any of the inventors or attorney prosecuting the patents-in-suit believe that the '137 patent, three-part combination, or test results were material to

patentability of the patents-in-suit, for all of the reasons set forth above. *See* §IV.A., *supra*. Again, the patents-in-suit are directed to EMI shielding gaskets that do not require intumescent properties. The inventions claimed therein are embodied commercially as Parker's Soft-Shield® 5000 series gaskets, which is not intumescent and does not include the three-part combination described in the '137 patent. Because the intumescent adhesive described in the '137 patent is not relevant to the patents-in-suit, and the inventors and prosecuting attorney did not believe otherwise, Seiren cannot show any degree of intent to deceive the Patent Office, let alone the high level intend that would be required to support an inequitable conduct claim under the circumstances. Thus, the '137 theory and the three-part combination theory fail as a matter of law for this reason as well.

### C.     The Petras Theory is Legally Deficient

Seiren argues that Petras is material to patentability of the patents-in-suit. In support of the Petras theory, Seiren states that Petras is material to claims in the patents-in-suit that recite halogenated and metal oxide flame retardant additives, and is not cumulative of any other prior art of record. Motion, Ex. A ¶18(y).

### a.  Petras is Not Material

Because Seiren alleges that Petras is material to claims "that recite halogenated and metal oxide flame retardant additives," the only claims of the patents-in-suit to which Petras could even arguably be relevant are dependent claims reciting those compounds, of which claim 9 of the '536 patent is representative:

> 9.     The gasket of claim 1 wherein said one or more flame retardant additives are selected from the group consisting of aluminum hydrate, antimony trioxide, phosphate esters, and halogenated compounds.

None of the *independent* claims in any of the patents-in-suit recite the particular flame retardant additives in the coating. Thus, to the extent that Petras is relevant to any claim, it can only be relevant to the dependent claims reciting "one or more" of aluminum hydrate, antimony trioxide, phosphate esters, and halogenated compounds. Because Seiren's theory of materiality is based not on features recited in the independent claims, but only on additional features found in the dependent claims, Petras cannot be material as a matter of law. *See In re Fine*, 837 F.2d 1071, 1076 (Fed. Cir. 1988) ("Dependent claims are nonobvious under section 103 if the independent claims from which they depend are nonobvious."). This concept, known as "derivative patentability," means that if an independent claim is patentable over the prior art (i.e., novel and nonobvious), any dependent claim based on that patentable independent claim must necessarily be patentable over the prior art because it includes all of the elements of the independent claim. *Chisum on Patents*, Vol. 3: §8.06[5][c]. In a case where a district court held a dependent claim invalid over prior art, but the independent base claim valid, the Federal Circuit explained, "[a] *fortiori*, [the] dependent claim . . . was nonobvious (and novel) because it contained all the limitations of [the independent] claim . . . plus a further limitation," *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987).

Under the concept of derivative patentability, the dependent claims that recite the halogenated and metal oxide flame retardant additives are patentable over the prior art based on the features recited in the independent claims from which they depend, regardless of any additional novelty (or lack thereof) of the "further limitation" recited in the dependent claim. Thus, because Petras is only alleged to be material to a "further

18

limitation" found in specific dependent claims, Petras cannot be material—as a matter of law—to the patentability of those dependent claims.  *Hartness Int'l*, 819 F.2d at 1108.

### b.  Petras is Cumulative of Admitted Prior Art

Further, Petras is cumulative of the admitted prior art in the specification of the patents-in-suit.  Seiren represents that Petras is relevant in that it demonstrates the use of halogen-containing flame retardant additives in an adhesive, and discloses other additives, such as antimony oxide.  Motion, Ex. A ¶ 18(x).

The patents-in-suit do not claim inventive rights over specific flame retardant additives.  In fact, the independent claims do not recite the particular flame retardant additives used in the coating.  Further, the specification of the patents-in-suit characterize both halogenated compounds and antimony oxide as "conventional" flame retardants. Specifically, the specification of the '536 patent, for example, states that "[f]lame retardancy may be imparted by loading the emulsion with between about 30-50% by weight of one or more conventional flame retardant additives such as aluminum hydrate, antimony trioxide, phosphate esters, or halogenated compounds."  '536 patent, col. 6, l. 67 – col. 7, l. 4.

Further, the specifications specifically identified a commercially available emulsion, Heveatex 4129FR, that included the combination of halogenated compounds and antimony oxide.  *See* '536 patent, col. 7, ll. 15-17; col. 9, ll. 55-56.  The Heveatex product and its disclosure in the specifications themselves teach all for which Petras is claimed to be relevant.  Bunyan Decl. ¶11.

In light of the characterization in the patents-in-suit that halogenated compounds and antimony compounds are "conventional," and the disclosure of the commercially

19

available Heveatex 4129FR emulsion containing the combination of brominated and antimony compounds, Petras is cumulative as a matter of law over the admitted prior art in the specifications.

**V.    Conclusion**

For the reasons set forth above, Parker respectfully submits that the '137 theory, the three-part combination theory, and the Petras theory set forth in Seiren's proposed Amended Answer are futile.  Thus, Parker requests that the Motion be denied.

CONNOLLY BOVE LODGE & HUTZ LLP,

By:   /s/ Francis DiGiovanni
       Rudolf E. Hutz (#484)
       Francis DiGiovanni (#3189)
       Steven A. Nash (PA #85707 - admitted *pro hac vice*)
       The Nemours Building
       1007 North Orange Street
       P.O. Box 2207
       Wilmington, Delaware 19801
       Tel:  (302) 658-9141
       Fax:  (302) 658-5614
       *Attorneys for Plaintiffs*

Dated:   September 5, 2008

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 5, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to counsel of record on the Court's CM/ECF registrants for this case.  I further certify that on September 5, 2008 I caused a copy of the foregoing documents to be served upon the following in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

Julia Heaney
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
jheaney@mnat.com

**BY E-MAIL**

Scott M. Daniels
Michael J. Caridi
Westerman, Hattori, Daniels & Adrian, LLP
1250 Connecticut Ave. NW
Washington, D.C. 20036
sdaniels@whdapatentlaw.com
MCaridi@WHDA.COM

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, and | ) | |
| PARKER INTANGIBLES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-104-MPT |
| | ) | |
| SEIREN CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PROPOSED ORDER</u>**

WHEREAS, the Court has reviewed Defendant, Seiren Co., Ltd.'s Motion for

Leave to File an Amended Answer to First Amended Complaint and Plaintiff Parker-

Hannifin Corp. and Parker Intangibles, LLC's Opposition thereto;

IT IS SO ORDERED, this _____ day of _____, 2008, Defendant

Seiren Co., Ltd.'s Motion for Leave to File an Amended Answer to First Amended

Complaint is DENIED.


_____
United States Magistrate Judge