IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PARKER-HANNIFIN CORPORATION and :
PARKER INTANGIBLES, LLC,              :
                                       :
        Plaintiffs,                    :
                                       :  Civil Action No. 07-104-MPT
   v.                                  :
                                       :
SEIREN CO., LTD.,                      :
                                       :
        Defendant.                     :

## MEMORANDUM OPINION

Rudolf E. Hutz, Esq., Francis DiGiovanni, Esq., Steven A. Nash, Esq., Connolly, Bove, Lodge & Hutz, LLP, The Nemours Building, 1007 North Orange Street, P.O. Box 2207, Wilmington, DE 19801.
Counsel for Plaintiffs.

Jack B. Blumenfeld, Esq., Julia Heaney, Esq., Morris, Nichols, Arsht & Tunnell, LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE, 19899.
        Of Counsel: Scott M. Daniels, Esq., Ken-Ichi Hattori, Esq., Michael J. Caridi, Esq., Westerman, Hattori, Daniels & Adrian, LLP, 1250 Connecticut Avenue, N.W., Suite 700, Washington, DC 20036.
Counsel for Defendant.

March 31, 2009

Wilmington, DE

Thynge, U. S. Magistrate Judge

This is a patent infringement case. Parker-Hannifin Corporation and Parker Intangibles, LLC (collectively "Parker") sued Seiren, Co., Ltd. ("Seiren") on five patents owned by Parker. After claim construction concluded, Parker moved to have its action against Seiren dismissed, which was granted. Thereafter, Seiren moved for a declaration that the matter is exceptional and an order for Parker to pay its attorney's fees and expenses. This opinion addresses Seiren's motion.

**Statement of Facts**

Parker's business includes the manufacturing of flame-retardant fabrics. It owns several patents in connection with this business. In 2004, Parker obtained a sample of fabric produced by Seiren from a Seiren sales representative. The sales representative promoted the fabric and suggested its use in the manufacturing of flame retardant electromagnetic interference shielding gaskets. Parker conducted an electron micrograph scan on the fabric swatch. The scan showed that the fabric was comprised of an electrically-conductive fabric which was coated in a flame retardant layer. The scan further revealed that the flame retardant layer was comprised of high levels of flame retardant additives, such as brominated and antimony compounds. Analysis at Parker's chromerics facility also demonstrated that the fabric could be used to create a gasket with V-0 rating under Underwriter's Laboratory Standards without the need for a V-0 core.

After conducting the abovementioned assessment, Parker determined that the Seiren fabric infringed upon its United States Patents: No. 6,387,523 ("'523 patent"); No. 6,521,348 ("'348 patent"); No. 6,716,536 ("'536 patent"); No. 6,777,095 ( "'095

patent"); and No. 6,248,393 ("'393 patent"). Parker filed suit against Seiren on February 22, 2007. Parker alleged that a gasket made with the Seiren fabric would meet all of the elements of the '523 patent; that the ability of the Seiren fabric to give a gasket a V-0 rating without the use of a V-0 core was claimed in the '348 patent; that the Seiren fabric contained high levels of the flame retardant additives such as brominated and antimony compounds as protected in the '536 and '095 patents; and that the Seiren fabric was manufactured in accordance with methods described in the '393 patent.

During the course of litigation, Parker served two sets of interrogatories and requests for documents on Seiren, engaged in document review of the 120,000 Japanese-language documents produced by Seiren through discovery, and scheduled depositions of Seiren employees at the United State Consulate in Japan. In response to interrogatories served by Seiren, Parker stated that Seiren infringed upon at least the '348, '536, and '095 patents, and it created a chart detailing the similar attributes shared by the Seiren fabrics and the fabrics protected directly or indirectly by the '348, '536, and '095 patents on an element-by-element basis. Parker failed to identify any Seiren products, devices, or processes that infringed the '393 and '523 patents.[1]

Seiren requested on October 22, 2007 that Parker withdraw the '393 and '523 patents against it. Parker refused to do so on January 7, 2008.[2] Parker notified Seiren

---

[1] Parker stated: "Discovery is continuing and Plaintiff is investigating the claims and defenses. Plaintiff will supplement its answer to this Interrogatory pursuant to the requirements of [Federal Rule of Civil Procedure] 26(e)."

[2] Parker responded: "[W]e believe it would be inappropriate to drop those patents at this stage given what we know of Seiren's products and activities. Should it become appropriate to supplement Parker's Interrogatory responses as discovery

of its intent to withdraw those patents from the case in correspondence sent on May 9, 2008, and did withdraw those patents at the claim construction hearing on August 5, 2008.

The case continued on the three remaining patents. On September 15, 2008, Parker filed a motion to dismiss the action against Seiren with prejudice because, based on discovery and the proceedings to date, it desired to focus its litigation efforts against gasket manufacturers.[3] This court granted the motion. On October 14, 2008, Seiren filed the present motion under consideration.

**Applicable Law**

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney's fees to the prevailing party" in patent infringement cases.[4] An exceptional case exists when there has been either materially inappropriate conduct, or subjective bad faith and objective baselessness.[5] The party bringing a motion for attorney's fees must meet its burden of proof with clear and convincing evidence.[6] The patentee is entitled to a presumption that the litigation was brought in good faith.[7]

<u>Materially Inappropriate Conduct</u>

The court may deem a case to be exceptional "when there has been some material inappropriate conduct related to the matter in litigation, such as willful

---

continues, Parker reserves the right to do so."
[3] Parker expressed its intent to proceed against Zippertubing Ltd. (Civil Action No. 06-cv-751-MPT) for infringement similar to that alleged against Seiren.
[4] 35 U.S.C. § 285.
[5] *Brooks Furniture Mfg., Inc., v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).
[6] *Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed. Cir. 2007).
[7] *Id.* at 1382.

3

infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates [Federal Rule of Civil Procedure] 11, or like infractions."[8] Examples of such misconduct include instances where a plaintiff: "made, at the least, grossly negligent misrepresentations to the [Patent and Trademark Office] and could not in good faith believe that the defendant's device infringed 'since every cursory reading of the claims makes obvious the fact of noninfringement[;]'"[9] "initiated a suit with unconfirmed data to support its infringement claim, refused to produce any test results, and was proven to have conducted unreliable and tainted tests[;]"[10] or "misled the Patent and Trademark Office during prosecution and had not made a reasonable assessment of the possibilities of infringement before bringing suit."[11]

Subjective Bad Faith and Objective Baselessness

In the absence of materially inappropriate misconduct, "sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."[12] An inference of bad faith is proper where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court[,]"[13] or where there is evidence of gross

---

[8] *Id.* at 1381.
[9] *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 473 (Fed. Cir. 1985) (citing *Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed. Cir. 1984)).
[10] *Id.* (citing *Locite Corp. v. Fel-Pro, Inc.*, 667 F.2d 557, 584 (7th Cir. 1981)).
[11] *Id.* (citing *Maurice A. Garbell, Inc. v. Boeing Co.*, 546 F.2d 297 (9th Cir. 1976)).
[12] *Prism Technologies LLC v. VeriSign, Inc.*, 579 F. Supp. 625, 628 (D. Del. 2008).
[13] *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

negligence.[14]  A plaintiff's withdrawal of a claim is not necessarily evidence of bad faith.[15]  Also, a plaintiff's failure to offer evidence of infringement as to certain aspects of the alleged infringing product is not necessarily evidence of bad faith.[16]

**Analysis**

Seiren suggests several grounds for finding that this matter is exceptional.

First, Seiren states that Parker pursued its strategy of intimidating Seiren into settlement while insulating itself from litigation costs by maintaining the '393 and '523 patents in the case without explaining how infringement occurred and by refusing to withdraw those patents from the case in a timely manner.  While Parker did not explain in its responses to Seiren's interrogatories how Seiren infringed the '393 and '523 patents, Parker represented that it was continuing to investigate the claims as discovery continued.  Not only were the documents that Parker obtained through discovery in a foreign language that required translation, but also, they were lengthy and technically complex.  Parker did not pursue the two patents after the claim construction hearing.  Such conduct does not rise to the level of materially inappropriate misconduct.  Though Seiren may be justifiably frustrated, its burden is to show by clear and convincing evidence that Parker acted in bad faith, which it has failed to do.

Second, Seiren doubts that Parker's allegations were valid at the time they were filed.  The present matter is similar to *Prism Technologies LLC* and *Forest Laboratories,*

---

[14] *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 473 (Fed. Cir. 1985).
[15] *Q-Pharma, Inc. v. Andrew Jergens, Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004).
[16] *Forest Laboratories, Inc. v. Abbott Laboratories*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).

*Inc.*

In *Prism Technologies LLC*, the court determined that while the plaintiff could have conducted a more thorough investigation before filing the action, the case was not exceptional because the plaintiff: spent a substantial amount of time analyzing the patent and determining whether defendant's products were infringing upon it; developed detailed claim charts that analyzed defendant's infringing products on an element-by-element basis; and obtained numerous manuals, guides, and other documentation regarding the functionality of the defendant's products used to develop the claims.[17] The court continued, stating that even if it concluded that the plaintiff's pre-filing investigation fell short, in order to demonstrate exceptional circumstances, defendant must still show that the plaintiff was "manifestly unreasonable in assessing infringement, while continuing to assert infringement . . . ."[18]

In *Forest Laboratories, Inc.*, the jury found for the plaintiff and determined that the defendant's products infringed.[19] The district court granted a judgment of non-infringement as a matter of law for failure to present evidence showing that the products were equivalent.[20] On appeal, the Federal Circuit denied the defendant's motion for attorney's fees and other expenses, stating that "we cannot say that such a lack of proof is clear and convincing evidence that [plaintiff], acting in bad faith, asserted a baseless or frivolous counterclaim of infringement" when the claims consisted of "'plausible yet untenable arguments regarding claim construction and doctrine of

---

[17] *Prism Technologies LLC*, 579 F. Supp. at 628.
[18] *Id.* (citing *Eltech Systems Corp.*, 903 F.2d at 811).
[19] *Forest Laboratories, Inc.*, 339 F.3d at 1327.
[20] *Id.*

6

equivalents.'"[21]

Parker performed a technical analysis which entailed a electron micrograph scan of the fabric swatch to identify any coverage by its patents. Seiren does not allege that those tests were tainted or unreliable. The conclusions derived from the analysis were affirmed by William Flanders ("Flanders"), co-inventor of the subject matter claimed in the patents-in-suit. Parker developed detailed claim charts which analyzed Seiren's infringing products on an element-by-element basis for three of the five patents. Parker also submitted a declaration of Flanders in which he explained how Seiren infringed all the patents-in-suit, including the '393 and '523 patents. Though further investigation could have occurred before filing suit, Parker's investigation suggests that its action was neither vexatious nor unjustified, and that its assessment of infringement was not manifestly unreasonable. Therefore, its conduct in this respect was not materially inappropriate. Further, that Parker never presented proof of those allegations does not mean that it acted in bad faith in bringing its claims when those claims were plausible.

Finally, Serein asserts that Parker was reckless by pursuing the case only while it was cost-effective, by waiting for nearly a year after receiving discovery from Seiren to seek dismissal of the case, and by failing to provide a more thorough explanation for the reasoning behind its motion to dismiss. Those arguments resemble the assertions in *Q-Pharma, Inc. v. Andrew Jergens Co.* In *Q-Pharma, Inc.*, the plaintiff withdrew its patent infringement claim after the defendant filed a motion for summary judgment

---

[21] *Id.* at 1331 (internal citation omitted).

revealing technical information about its product that was unfavorable to the plaintiff's claim.[22] The court found no evidence of any bad faith on the part of the plaintiff in "its determination that further pursuit of the lawsuit would not have been worth the investment required to prove infringement."[23] The court held that "we fail to see how a changed legal theory that leads to the voluntary dismissal of a lawsuit can amount to bad faith litigation."[24]

Parker is pursuing an action against Zippertubing. It acknowledges that any recovery from Seiren "would be largely duplicative with that from Seiren's customer Zippertubing and would not be justified when balanced against the costs of continuing to litigate the case."[25] Parties should be able to terminate litigation when costs make trial an unattractive remedy or when other litigation strategies develop. Parker's decision to dismiss based on a cost-benefit analysis is evidence of neither materially inappropriate conduct nor bad faith litigation.

**Waiver of Attorney-Client Privilege and Work-Product Immunity**

In its reply brief, Seiren argues that Parker waived any attorney-client privilege or work-product immunity regarding its deliberations as to whether to continue litigation.[26] Seiren contends that such waiver occurred when Parker asserted in its answering brief that it initiated the action in good faith and pursued it only until realizing that potential recovery from Zippertubing would be duplicative. Seiren asks for limited discovery

---

[22] *Q-Pharma, Inc. v. Andrew Jergens, Co.*, 360 F.3d 1295, 1298 (Fed. Cir. 2004).
[23] *Id.* at 1304.
[24] *Id.*
[25] D.I. 75 at 14.
[26] D.I. 80 at 1.

regarding Parker's state of mind be permitted.

The attorney-client privilege protects disclosure of communications between a client and his or her attorney.[27] The work-product immunity is designed to balance the needs of facilitating an attorney's preparation in representing a client with society's interest in revealing all true and material facts to the resolution of a dispute.[28] By asserting the advice of counsel as a defense, a party "waives work product protection and the attorney-client privilege for all communications on the same subject matter, as well as, any documents memorializing attorney-client communications."[29] Courts are less inclined to extend a waiver of privilege to the communications of trial counsel as opposed to opinion counsel,[30] because in most cases, "the demands of our adversarial system of justice will far outweigh any benefits of extending waiver to trial counsel."[31] This same rationale applies with even greater force to the waiver of work-product immunity because of the nature of the work-product doctrine.[32] When waiver occurs, its scope applies to all other communications relating to the same subject matter.[33]

Parker did not place any privileged information at issue, did not reference any

---

[27] *United States v. Zolin*, 491 U.S. 544, 562 (1989).
[28] *In re Seagate Technology, LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007).
[29] *Id.*
[30] *Id.* at 1373 ("[T]he significantly different functions of trial counsel and opinion counsel advise against extending waiver to trial counsel. Whereas opinion counsel serves to provide an objective assessment for making informed business decisions, trial counsel focuses on litigation strategy and evaluates the most successful manner of presenting a case to a judicial decision maker . . . . Because of the fundamental difference between these types of legal advice, this situation does not present the classic 'sword and shield' concerns typically mandating broad subject matter waiver.").
[31] *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996).
[32] *In re Seagate*, 497 F.3d at 1375.
[33] *Id.* at 1372.

attorney-client communication, and did not claim to rely on the advice of legal counsel in either bringing the claim or dismissing it. Instead, Parker explained how it performed due-diligence before filing its claim and simply stated that further pursuing the claim against Seiren was not cost effective. Parker's offering of this information was not an affirmative act, but rather, was done in response to a motion filed by Seiren alleging that Parker had exhibited materially inappropriate misconduct, in part, by pursuing its litigation in bad faith. Additionally, Seiren does not need the requested information for anything vital to its defense because the court has already dismissed the infringement claims.

Consistent with the findings herein, Seiren's motion for attorney's fees and expenses is denied. Seiren's request for additional discovery is also denied. An appropriate order shall follow.